Thomas E. **BASTIN,** et al., Appellants

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION,** Appellee.

No. 96–7082.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 16, 1996.

Decided Jan. 21, 1997.

M. Scott Barrett, Bloomington, IN, argued the cause for appellants, with whom Law-

rence Walner, Cathleen M. Combs, Chicago, IL, Tara L. Goodwin and Alan J. Roth, Washington, DC, were on the briefs.

Robert N. Weiner, Washington, DC, argued the cause for appellee, with whom J. Kelly Wright and Kenneth I. Juster were on the brief.

Before: EDWARDS, Chief Judge, GINSBURG and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Thomas Bastin and Tina Rife–Bastin brought this case as a class action against the Federal National Mortgage Association (Fannie Mae) for allegedly miscalculating the interest rate on their adjustable rate residential mortgage. The district court granted Fannie Mae's motion to dismiss, which it treated as a motion for summary judgment, with regard to all the Bastins' claims: breach of contract, unfair and deceptive practices, intentional misrepresentation, breach of fiduciary duty, and the inevitable RICO violation. For the reasons that follow, we affirm the decision of the district court.

## I. BACKGROUND

In 1984 the Bastins got from First Indiana Federal Savings Bank a mortgage loan secured by their home in Indiana. First Indiana sold the loan to Fannie Mae in 1991. For present purposes, the parties agree that First Indiana has remained Fannie Mae's servicing agent for the Bastins' mortgage.

The mortgage contains an Adjustable Rate Rider that governs changes in the interest rate. Under the terms of the Rider the interest rate is subject to change every March and September. The Rider provides:

Beginning with the first Interest Change Date, [the] interest rate will be based on an Index. The "Index" is the weekly auction average rate on United States Treasury bills with a maturity of 6 months, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each

Interest Change Date is called the "Current Index."

To determine the interest rate, First Indiana adds 2.625 percentage points to the "Current Index" and rounds up to the nearest 0.125 percentage point.

There are several ways of learning the weekly auction average rate on United States Treasury bills with a maturity of six months, more commonly called the "six-month T-bill rate." Three types of sources release the six-month T-bill rate on the day of the auction: (1) the auction hotline operated by each of the regional Federal Reserve Banks; (2) private electronic services, such as Telerate; and (3) certain newspapers, such as the *Wall Street Journal.* A fourth source is Statistical Release H.15, which is published by the Federal Reserve Board every Monday and reports the results of the auction held the previous week. Because Release H.15 lags behind the other sources by one week, when interest rates are falling a mortgagor is benefitted by the use of one of the other three sources. When interest rates are rising, those methods favor the mortgagee.

First Indiana used Telerate as its source for the six-month T-bill rate until September 1988, when it switched to Release H.15. First Indiana continued to use Release H.15 to calculate the interest on the Bastins' mortgage after Fannie Mae bought the loan in 1991. Since 1991 Fannie Mae has required the institutions that service its adjustable rate mortgages to use Release H.15 for the six-month T-bill rate because, as Fannie Mae put it in terms that track the Adjustable Rate Rider, "that is the earliest date that these rates are made available by the Federal Reserve Board (even though they may be available from other sources earlier)." Fannie Mae Announcement 91–19.

In June 1995 the Bastins filed a class-action complaint against Fannie Mae, which they twice amended. Although the Second Amended Complaint contains several causes of action, the claim central to each is that the Bastins' mortgage contract requires Fannie Mae—through its servicing agent First Indiana—to consult Telerate or a Federal Reserve Bank hotline because they are the sources that provide (in the terms used by the Adjustable Rate Rider) "the most recent Index figure available."

Fannie Mae moved pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss the Second Amended Complaint for failure to state a claim. At a pre-trial conference, Judge Robertson informed the parties that he was considering treating the motion as one for summary judgment, and soon thereafter asked the parties to submit statements of material facts as to which there is no genuine issue. The Bastins then sought discovery in order to get:

> (i) information about six month treasury indexed [adjustable rate mortgages] serviced for Fannie Mae which have been adjusted, the method of adjustment, and Fannie Mae's actions relating thereto and (ii) information about agency practice and relationships between the Federal Reserve Board and the federal reserve banks and/or member banks related to disclosure of weekly auction average rates on United States Treasury bills with a maturity of six months.

The district court denied the Bastins' motion for discovery and entered summary judgment in favor of Fannie Mae. The district court held that the mortgage contract between the parties unambiguously permits Fannie Mae to use Release H.15 as its source for the six-month T-bill rate. Judge Robertson rejected the Bastins' argument that there is a disputed issue of material fact concerning whether the Federal Reserve Board disseminates the six-month T-bill rate via hotlines operated by the Federal Reserve Banks as its agents. The court held that the Federal Reserve Board is not responsible for this activity of the legally distinct Federal Reserve Banks, and that the Bastins' claim that the Board provides the six-month T-bill rates to the Banks was nothing more than "[u]nsupported speculation" that did not create a genuine issue of material fact precluding summary judgment. The district court also rejected the Bastins' argument that the contract must be ambiguous for other of Fannie Mae's servicing agents have allegedly interpreted the provision at issue here in different ways: Because the contract is unambiguous on its face, the court held, it

would not be proper to consider extrinsic evidence in search of an ambiguity.

## II. ANALYSIS

At the heart of this case is the question whether Fannie Mae breached its mortgage contract with the Bastins by using Release H.15 as its source for the six-month T-bill rate. The Bastins offer three ways of interpreting the contract, each of which would render summary judgment for Fannie Mae inappropriate. First, the Bastins claim that the contract is unambiguous and requires Fannie Mae and its servicing agents to consult Telerate or a Federal Reserve Bank hotline because only these methods report the "most recent Index figure available." Second, the Bastins claim that the contract is ambiguous because it could be interpreted either as requiring use of Telerate or of a Federal Reserve Bank hotline or as permitting the use of Release H.15. Finally, the Bastins argue that there is a genuine issue of material fact concerning whether the Federal Reserve Banks' dissemination of T-bill rates via auction hotlines may be imputed to the Federal Reserve Board.

█ None of these three interpretations has any merit because the interest rate provision unambiguously permits the use of Release H.15 as the source of the six-month T-bill rate. The Adjustable Rate Rider first states that the "interest rate will be based on an Index." In the second sentence, "Index" is defined as "the weekly average rate on United States Treasury bills with a maturity of 6 months, as made available by the Federal Reserve Board." The third sentence defines the phrase "Current Index" as "[t]he most recent Index figure available as of the date 45 days before each Interest Change Date." Reading these three sentences together to form a single coherent provision, it is obvious that the term "Index" in the phrase "Current Index" is the term defined in the previous sentence as the rate "made available by the Federal Reserve Board." Therefore, the contract clearly provides that the relevant rate is the rate "as made available by the Federal Reserve Board," not the same rate as made available by Telerate or anyone else.

Release H.15 is the only medium through which the Federal Reserve Board makes the weekly T–Bill auction average rate available. The Bastins speculate that the Federal Reserve Board somehow makes the six-month T-bill rate available through the automated hotlines of the regional Federal Reserve Banks, but the Declaration of Joseph Coyne (Assistant for Public Affairs to the Federal Reserve Board) makes it clear that the Federal Reserve Board does not do so. According to Coyne "[t]he Board has not established a process for making the information that will be contained in [Release H.15] available through a telephone hotline, a computer network, or similar facility prior to the issuance of that Release." Nor do the Bastins point to any statute or regulation concerning the relationship between the Federal Reserve Board and the Federal Reserve Banks that indicates that the Board does or may use the Banks as its agent for the dissemination of rate information.

█ The Bastins would like to import ambiguity into their facially unambiguous contract by presenting evidence that other lending institutions that service other Fannie Mae mortgages with the same interest rate adjustment provisions use Telerate as their source for the six-month T-bill rate. The Bastins' mortgage, however, provides that it is governed by the law of the state where the property is located, and Indiana law forbids a court from considering extrinsic evidence when the terms of a contract are unambiguous. *Plumlee v. Monroe Guaranty Ins. Co.,* 655 N.E.2d 350, 359 (Ind.Ct.App.1995); *Coates v. Jaye,* 633 N.E.2d 334, 337 (Ind.Ct. App.1994).

█ The Bastins also argue that the district court erred in denying their motion for discovery of information concerning the relationship between the Federal Reserve Board and the hotlines of the Federal Reserve Banks. As the Bastins point out, when a court converts a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) into a motion for summary judgment, "all parties must be given a 'reasonable opportunity to present all material made pertinent to such a motion by Rule 56.'" *First Chicago Int'l v. United*

*Exchange Co., Ltd.,* 836 F.2d 1375, 1380 (D.C.Cir.1988) (quoting Fed.R.Civ.P. 12(b)). Even so the district court here did not abuse its discretion in refusing the Bastins' request for discovery inasmuch as the Bastins were unable to offer anything but rank speculation to support their contention that the Federal Reserve Board is somehow involved in the release of rate information via the hotlines of the Federal Reserve Banks. The district court does not abuse its discretion when it denies a discovery request that would amount to nothing more than a fishing expedition.

The Bastins' other challenges to the district court's decision to dismiss this case do not warrant consideration in a published opinion. Accordingly, the order of the district court granting summary judgment in favor of Fannie Mae on all claims is

*Affirmed.*