**CITY OF MUNCIE, by and through the MUNCIE FIRE DEPARTMENT, Appellant–Defendant,**

v.

**Thomas WEIDNER and Lauren Weidner, as surviving parents of A.B.W., deceased, Appellees–Plaintiffs.**

No. 18A04–0409–CV–485.

Court of Appeals of Indiana.

July 22, 2005.

Rehearing Denied Sept. 16, 2005.

Mark A. Holloway, Stephenson Morow & Semler, Indianapolis, for Appellant.

Edward L. Murphy, Jr., Calvert S. Miller, Stephen J. Harants, Miller Murphy & Miller, LLP, Fort Wayne, for Appellees.

## OPINION

KIRSCH, Chief Judge.

In this interlocutory appeal, the City of Muncie ("Muncie"), by and through the Muncie Fire Department, appeals the trial court's denial of its motion for summary judgment in a wrongful death of child action, which was brought by Thomas and Lauren Weidner (the "Weidners") as the surviving parents of A.B.W. ("A.W."). On appeal, Muncie raises various issues, of which we find the following to be dispositive: Whether the trial court erred in denying Muncie's motion for summary judgment because Muncie and its fire department neither had nor assumed a duty to protect A.W. from a downed, live, power line.

We reverse and remand.[1]

---

1. We heard oral argument on this case on May 10, 2005, in Indianapolis. We commend

## FACTS AND PROCEDURAL HISTORY

On July 29, 2002, a storm caused more than 5,300 Muncie residents to lose electric power. That afternoon, Tony Gothard went home early from work in response to his wife's call reporting that their home's circuit breaker box was sparking. After arriving home, Gothard, who lived at 1308 North Mann Avenue, discovered no loss of electricity and found no sparks at the breaker box, but noted that the outside power line to his home was sagging. Gothard reported the problem to the electric company that owned the line, Indiana Michigan Power Company, a unit of American Electric Power ("AEP"), and returned outside to inspect the line. While outside, Gothard heard cracking and popping noises emanating from his next-door neighbor's backyard at 1300 North Mann Avenue. Upon further investigation, Gothard noticed a power line hanging down into the middle of the bushes between the two homes and reported it to the Muncie Fire Department.

The fire department dispatched a truck with fireman Mark Hill in charge. By the time the truck arrived, Gothard no longer heard any cracking or popping, but showed Hill the area where he had heard the sounds and where the line could still be seen hanging into the bushes. Hill told Gothard to keep his family out of the backyard because electricity can travel both through bushes and through the ground. Earlier, AEP had instructed the fire department to assume that all downed lines were live and to stay away from them. Hill called E–911 dispatch, which immediately faxed a report to AEP, notifying them of the address and stating, "wires down in yard, burning." *Appellant's Appendix* at 99–100. The fire department completed its business at the Gothards'

home in about five minutes and left before AEP arrived on the scene.

Around noon the next day, Gothard's wife called him at work to report that someone from AEP had been to their home, looked at the sagging wire in the backyard, and left without attempting to speak with her. *Appellant's Appendix* at 72–73. Gothard returned home and called AEP to report that, although someone had been out to check on the power line, the downed power line had still not been taken care of. After some questioning by AEP as to how Gothard could have both a downed line and still have power, the company agreed to send someone out as soon as possible. *Id.* at 74–75.

That same day, around 2:00 p.m., while D.B. and A.W. were mowing a backyard that abutted the Gothard's backyard, D.B. discovered A.W. unconscious and lying on his back. In response to D.B.'s telephone call, the E–911 center dispatched an ambulance at 2:04 p.m. Once at the scene, emergency medical technician Gary Gardner assessed the situation for dangers, including a possible downed power line, but did not see or hear anything unusual. He then began administering first aid to A.W. Police Officer Linda Cook, who was assisting Gardner, stepped back, received an electric shock and, in turn, fell on and shocked Gardner. A.W. died as a result of his injuries.

On May 19, 2003, the Weidners filed an amended complaint in the Delaware Circuit Court alleging that Muncie, by and through the actions of its fire department, negligently failed to protect A.W. from a downed, live, power line. The complaint asserted that the Muncie Fire Department had a duty to protect persons in Muncie from dangerous conditions that were made known to it; that the fire department

counsel on the quality of their written and oral advocacy.

failed to take proper precautions after being notified of the downed power line; and that, as a proximate result of this negligence, A.W. came into contact with the line and was killed.[2] *Appellant's Appendix* at 138–139. As such, the Weidners alleged that they were entitled to damages pursuant to IC 34–23–2–1—the wrongful death of a child statute. The Weidners also had previously filed a tort claim notice with the Mayor of Muncie, the City Attorney of Muncie, and the Indiana Political Subdivision Risk Management Commission, notifying them of the lawsuit. *Appellant's Appendix* at 141–143.

Muncie filed a motion for summary judgment, arguing: (1) common law immunity barred the plaintiffs' claims against Muncie; (2) Muncie was immune from liability under the Tort Claims Act (IC 34–13–3–3(19)) for any loss resulting from the development, adoption, implementation, operation, maintenance, or use of an enhanced emergency communications system;[3] (3) Muncie also was immune from liability under the Emergency Management and Disaster Law (IC 10–14–3) because the firemen were responding to a danger caused by a severe storm; and (4) Muncie did not have a duty to maintain the power line facilities at issue in the Weidners' complaint because it did not own, operate, or manage those facilities. *Appellant's Appendix* at 24. The trial court denied Muncie's motion on April 8, 2004.

On April 20, 2004, Muncie requested certification of the order, but the trial court withheld ruling on the matter so that the parties could mediate the case. During the mediation, AEP, a defendant in the original suit, entered into a settlement agreement with the Weidners and was dismissed from the suit with prejudice. On August 25, 2004, the trial court certified for interlocutory appeal its ruling denying Muncie's motion for summary judgment in the Weidners' action. Muncie now appeals.

## DISCUSSION AND DECISION

■■■ When reviewing the denial of a motion for summary judgment, we use the same standard as the trial court. *Forty–One Assocs., LLC v. Bluefield Assocs., L.P.*, 809 N.E.2d 422, 426 (Ind.Ct.App. 2004); *Bastin v. First Indiana Bank,* 694 N.E.2d 740, 743 (Ind.Ct.App.1998), *trans. denied.* Summary judgment is appropriate only if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Forty–One Assocs.,* 809 N.E.2d at 426; *Hemingway v. Sandoe,* 676 N.E.2d 368, 369 (Ind.Ct.App.1997). The moving party must designate sufficient evidence to eliminate any genuine factual issues, and, once the moving party has done so, the burden shifts to the nonmoving party to come forth with contrary evidence. *Mid–States Gen. & Mech. Contracting Corp. v. Town of Goodland,* 811 N.E.2d 425, 430 (Ind.Ct. App.2004). We accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. *Id.* The party appealing from a summary judgment decision bears the burden of persuading this court that the ruling was erroneous. *Splittorff v. Fehn,* 810 N.E.2d 385, 387 (Ind.Ct.App.

---

**2.** Although Cook, Gardner, and their spouses were plaintiffs in the original action, they are not party to this appeal.

**3.** On appeal, Muncie no longer argues that it is immune from liability under the Tort Claims Act (IC 34–13–3–3(19)) for any loss resulting from the development, adoption, implementation, operation, maintenance, or use of an enhanced emergency communications system.

2004), *trans. denied* (2005) (citing *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 908 (Ind.2001)).

To be granted summary judgment in this negligence action, Muncie had to demonstrate that the undisputed material facts negated at least one element of the Weidners' claim or that the claim was barred by an affirmative defense. *City of Hammond v. Cipich ex rel. Skowronek*, 788 N.E.2d 1273, 1278 (Ind.Ct.App.2003), *trans. denied*. The trial court found that Muncie did not meet this burden.

■ On appeal, Muncie contends that it should have been granted summary judgment on one of three grounds: (1) because Muncie and its fire department owed no duty of care to protect A.W. from the power line which was owned and operated by AEP; (2) because the common law, which grants immunity from tort liability to those failing to provide adequate police protection to prevent crime, by reasonable extension also grants immunity when there is a claim, such as this, that the fire department failed to secure an area near a downed power line; or (3) because the statutory immunity provided by the Emergency Management and Disaster Law, IC 10–14–3, which was intended to facilitate rescue and remedial measures, establishes immunity for municipalities responding to destruction caused by storms. We find the first issue to be dispositive.[4]

■ To prevail on a claim of negligence, the Weidners must show: (1) a duty owed to them by Muncie or its fire department; (2) a breach of that duty; and (3) compensable injury proximately caused by

Muncie or its fire department's breach of duty. *King v. Northeast Security, Inc.*, 790 N.E.2d 474, 484 (Ind.2003); *Williams v. Cingular Wireless*, 809 N.E.2d 473, 476 (Ind.Ct.App.2004), *trans. denied.* Before reaching the questions of breach and injury, we must consider the threshold matter of whether Muncie and its fire department owed a duty to the Weidners. *See Williams*, 809 N.E.2d at 476. " 'Duty' has been defined as 'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.' " *Guy's Concrete, Inc. v. Crawford*, 793 N.E.2d 288, 293 (Ind. Ct.App.2003), *trans. denied* (quoting W. KEETON, PROSSER & KEETON ON THE LAW OF TORTS 356 (5th ed.1984)). Absent a duty, there can be no breach and, therefore, no recovery in negligence.

■ Whether a defendant must conform his conduct to a certain standard for the plaintiffs' benefit is a question of law for the court to decide. *Estate of Heck ex rel. Heck v. Stoffer*, 786 N.E.2d 265, 268 (Ind.2003); *see Neal v. Home Builders, Inc.*, 232 Ind. 160, 111 N.E.2d 280 (1953). Courts will generally find a duty where reasonable persons would recognize and agree that it exists. *Estate of Heck*, 786 N.E.2d at 268. A duty, when found to exist, is the duty to exercise reasonable care under the circumstances. *Goodrich v. Indiana Michigan Power Co.*, 783 N.E.2d 793, 796 (Ind.Ct.App.2003), *trans. denied; Correll v. Indiana Dept. of Transp.*, 783 N.E.2d 706 (Ind.Ct.App. 2002), *trans. denied* (2003).

---

4. "Immunity assumes negligence but denies liability. The purpose of immunity is to ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment."

*Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind.2003) (citations and quotation marks omitted). Finding, as we do, that Muncie did not assume a duty that makes it liable to A.W., we need not reach the issue of whether Muncie was immune from liability.

A governmental unit is bound by the same duty of care as a non-governmental unit except where the duty alleged to have been breached is so closely akin to one of the limited exceptions (prevent crime, appoint competent officials, or make correct judicial decisions). *Benton v. City of Oakland City*, 721 N.E.2d 224, 230 (Ind. 1999); *O'Connell v. Town Of Schererville of Lake County, Indiana*, 779 N.E.2d 16, 18 (Ind.Ct.App.2002). The duty never changes, although the standard of conduct required to measure up to that duty varies depending upon the particular circumstances. *Goodrich*, 783 N.E.2d at 796.

In their brief, the Weidners recognize that the Muncie Fire Department: (1) has no duty with respect to AEP's power lines; (2) was instructed by AEP to refrain from maintaining, repairing, or servicing the power lines; and (3) did not own, operate, manage or control the power lines. *Appellees' Brief* at 11. As such, the Weidners concede that, "unlike a call for help with a fire or a rescue, [Muncie] has no obligation to respond to a call for downed power lines. [Muncie] may simply refer the matter the AEP." *Id.* Notwithstanding this admission, the Weidners contend that, through its actions, the Muncie Fire Department assumed a duty.

Indiana law provides that a duty may be " 'created by gratuitous or voluntary assumption.' " *Bldg. Materials Mfg. Corp. v. T & B Structural Sys., Inc.*, 804 N.E.2d 277, 282 (Ind.Ct.App.2004) (quoting *Gunter v. Village Pub*, 606 N.E.2d 1310, 1312 (Ind.Ct.App.1993)). " '[A] duty may be imposed upon one who by affirmative conduct . . . assumes to act, even gratuitously, for another to exercise care and skill in what he has undertaken. It is apparent that the actor must specifically undertake to perform the task he is charged with having performed negligently, for without the actual assumption of the

undertaking there can be no correlative legal duty to perform the undertaking carefully.' " *Vandenbosch v. Daily*, 785 N.E.2d 666, 669 (Ind.Ct.App.2003), *trans. denied* (quoting *Arnold v. F.J. Hab, Inc.*, 745 N.E.2d 912, 915 (Ind.Ct.App.2001) (quotation omitted)).

The Weidners concede that the Muncie Fire Department only owed A.W. the duty it assumed by responding to Gothard's call. *Appellees' Brief* at 12. Therefore, our determination of whether the Muncie Fire Department is liable to the Weidners for the death of A.W. hinges on the type of duty assumed.

Section 324A of the Restatement (Second) of Torts "parallels Indiana's doctrine of assumed duty." *Ward v. First Indiana Plaza Joint Venture*, 725 N.E.2d 134, 136 (Ind.Ct.App.2000), *trans. denied* (citing *Auler v. Van Natta*, 686 N.E.2d 172, 175 (Ind.Ct.App.1997), *trans. denied* (1998)). Section 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

The assumption of a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent per-

son. *Bldg. Materials Mfg. Corp.*, 804 N.E.2d at 282. "Whether a party assumed a duty and the extent of that duty are questions for the fact-finder. However, a court may decide the issue as a matter of law when the record contains insufficient evidence to establish such a duty." *Id.* (citing *Vaughn v. Daniels Co. (West Virginia), Inc.*, 777 N.E.2d 1110, 1137 (Ind.Ct. App.2002)).

We find that Muncie designated sufficient evidence, which was not rebutted by the Weidners, to establish that Muncie did not assume a duty for which it could be held liable.

Here, the record before us contains evidence to establish that the Muncie Fire Department's response to Gothard's call about a downed power line did not increase the risk of harm to A.W. The duty to maintain the lines was AEP's. Upon learning of the downed line, Gothard's first call was to AEP to report the line was down. It was not until Gothard heard popping noises emanating from the bushes near the downed line that he thought to call the fire department. A.W. would have been victim to the same tragic accident regardless of whether the fire department failed to respond, had never been called, or, as was the case, responded and warned Gothard and his family to stay out of their backyard.

The Weidners' contend there was an increased risk of harm because if the fire department had done its job and stayed on the scene, someone would have been there to warn A.W. about the live wire. This contention misstates the standard for assumption of duty. It says only that the risk of harm to A.W. would have been decreased had the fire department assumed the duty and carried it out reasonably. The standard by which we judge the fire department's action, however, is not whether the risk of harm would have *decreased* had the fire department acted with reasonable care. Rather, it is whether the fire department's failure to exercise reasonable care *increased* the risk of such harm. There is no designated evidence that the risk of harm to A.W. was increased by the fire department's actions.

Likewise, the Weidners have failed to show that the Muncie fire department undertook to perform a duty owed by AEP to A.W. By the parties' own admissions, AEP had told the fire department to stay away from the lines and had asked the fire department to inform them about downed lines. Further, AEP had told the fire department to assume that a downed wire was live and to stay away. There is no evidence in the record before us that the fire department undertook to perform a duty owed by AEP.

Finally, there is no designated evidence that the harm suffered by A.W. occurred because he relied on the fire department's actions. The storm that knocked down the power line occurred the previous day. There is no evidence that A.W. spoke with Gothard or the fire department before[5] or during the time he was cutting the lawn or that he had heard about the downed line or the fire department's warning to stay away from the area of the downed line. There is no evidence in the record before us that the harm suffered by A.W. occurred because of his reliance on Muncie's fire department.

**5.** This is not to say that the MFD needed to speak with A.W. in order to assume a duty to provide for his safety. We intend no such implication. Rather, we base our holding on the lack of evidence of any reliance whatsoever on the part of A.W. What would constitute sufficient evidence of reasonable reliance is not presented by the fact situation here presented, and, accordingly, we do not reach such issue.

Reviewing the designated evidence presented to the trial court, we conclude, as a matter of law, that the Muncie Fire Department did not assume a duty to A.W. because: (1) any failure to exercise reasonable care did not increase the risk of harm to A.W.; (2) the fire department had not undertaken to perform a duty owed by AEP to A.W.; and (3) the harm A.W. suffered did not arise because of A.W.'s reliance on the fire department's undertaking. We reverse the trial court's denial of Muncie's motion for summary judgment, and remand with instructions that the trial court enter summary judgment in favor of Muncie.

Reversed and remanded.

VAIDIK, J., concurs.

MATHIAS, J., concurs with separate opinion.

MATHIAS, Judge, concurring.

I respectfully concur and write separately to consider the effect of an emergency response and inspection by a public safety agency like the Muncie Fire Department ("MFD").

The Weidners contend that, through its act of responding to the report of downed power lines on the Gothard property, the MFD assumed a duty to reasonably provide for A.W.'s protection. As correctly noted by the majority, duty may be assumed by the performance of a voluntary, gratuitous act.

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking if:

(a) his failure to exercise reasonable care increases the risk of such harm; or

(b) he has undertaken to perform a duty owed by the other to the third person; or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Ward v. First Ind. Plaza Joint Venture*, 725 N.E.2d 134, 136 (Ind.Ct.App.2000), *trans. denied* (quoting Restatement (Second) of Torts § 324A (1965)). Assumption of a duty creates a relationship between the parties and a corresponding duty to act in a reasonable manner. *Id.* (citing *Delta Tau Delta, Beta Alpha Chapter v. Johnson*, 712 N.E.2d 968, 975 (Ind.1999)). The existence and extent of such a duty is ordinarily a question of fact; however, when the evidence is insufficient to establish such a duty, the court will decide the issue as a matter of law. *Id.*

I also agree with the majority that increase or decrease of the danger to the third party in question is a standard by which courts determine whether a duty has been assumed. In this context, there is no allegation that A.W. was near the Gothard property when the MFD inspected the property. Rather, the record indicates A.W. was mowing the lawn in question for a landlord the day after the MFD's response and had no reason to know of the MFD's previous visit to the Gothard property. Appellant's App. p. 123. As such, it was impossible for the MFD to increase the danger to A.W.

A reasonable person who witnesses a fire crew come to a nearby home after a storm and inspect the property would (and should) conclude that the responding fire crew would notify all persons endangered by the condition inspected by the crew, both on and near the property inspected. Accordingly, the mere act of witnessing

the MFD near the Gothard property could have been enough for A.W. and any others similarly situated to assume the MFD would have warned all who might be endangered by the downed line. Observation or knowledge that a public safety official has inspected but not issued a warning may increase risk by discouraging caution and independent investigation—at least enough for the issue of duty to be decided by a jury.

Nonetheless, A.W. did not see or learn that the MFD had responded and inspected the Gothard property. Therefore, under the facts and circumstances of the case before us, A.W. could not have reasonably relied upon the absence of a warning from the MFD.