John S. PANIAGUAS, et al, Appellants–Plaintiffs,

v.

ENDOR, INC., et al, Appellees– Defendants.

No. 45A05–0505–CV–295.

Court of Appeals of Indiana.

May 18, 2006.

J. Michael Katz, Goodman, Katz & Scheele, Highland, Jack W. Lawson, Jeremy L. Reidy, Beckman Lawson, LLP, Fort Wayne, for Appellants.

Kenneth D. Reed, Abrahamson Reed & Bilse, Hammond, for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

John and Kathy Paniaguas, and Woodrow and Kristine Cornett (collectively "Appellants"), appeal the trial court's dismissal with prejudice of claims against Aldon

Companies, Inc. ("Aldon") for breach of contract and negligence.

We affirm.

## ISSUE

Whether the trial court erred in finding that Appellants' complaint failed to state a claim upon which relief could be granted.

## FACTS

Aldon sold John and Kathy Paniaguas ("Paniaguas") a lot in Unit # 1 of the Fieldstone Crossing development on July 6, 1993. This property was subsequently conveyed on March 29, 1994. Aldon later sold Woodrow and Kristine Cornett ("Cornetts") a lot in Unit # 1 of the Fieldstone Crossing development on April 3, 2001, which was conveyed on May 21, 2001. The purchasing of these lots in the suburban development came with numerous covenants and restrictions concerning the use of the property. These restrictions ranged from how lots may be fenced to the placement of recreational vehicles on the property. Included amongst these covenants were restrictions ensuring uniform quality of development throughout the Fieldstone Crossing subdivision.

Aldon later sold its interest in Unit # 1 and the remainder of Unit # 1's lots to Endor, Inc. ("Endor"). This sale transferred the rights and obligations of Aldon to Endor; including its obligations to maintain and finish the development of the surrounding property as well as to sustain the high quality of properties in accordance with the real covenants. Appellants brought an action asserting that Endor had then developed homes at a level of quality below that of homes constructed by Aldon, causing a diminution in the value of Appellants' homes.

On December 6, 2004, Appellants filed their Second Amended Complaint seeking monetary damages and injunctive relief against a number of individuals and business entities related to the Fieldstone Crossing development; amongst these entities was Aldon. Appellants claimed that Aldon (1) was negligent in failing to adequately protect their interests via the real covenants when the obligations were assigned to Endor, and (2) breached Appellants' contracts in the sale of their individual lots by failing to protect Appellants' interests via the real covenants when the obligations were assigned to Endor.

On January 20, 2005, Aldon moved to dismiss itself for failure of the Appellants to state a claim upon which relief can be granted under Indiana Trial Rule 12(B)(6). The trial court granted the motion on May 25, 2005, dismissing Aldon with prejudice.

## DECISION

We review *de novo* a trial court's grant of a Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted as it "tests the legal sufficiency of a claim." *Town of Plainfield v. Town of Avon,* 757 N.E.2d 705, 710 (Ind.Ct.App.2001). "A dismissal under Trial Rule 12(B)(6) is improper unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts." *In re A.B. v. S.B.,* 837 N.E.2d 965, 966 (Ind.2005). Thus, a trial court's grant of such a motion is proper only if the allegations in the complaint are unable to support relief under any set of circumstances. *Watson v. Auto Advisors, Inc.,* 822 N.E.2d 1017, 1023 (Ind.Ct.App. 2005). "In making this determination, the court must look only to the complaint and may not resort to any other evidence in the record," and the allegations in the complaint must be considered to be true. *Id.*

## 1. *Tort Claim*

■ Appellants contend that Aldon had a duty to ensure that its successor developer, Endor, would adequately adhere to the restrictive covenants that applied to the subdivision. In effect, Appellants desire that Aldon, a previous owner of the development, be held liable in tort for the negligent breach of their sales contracts by a successive owner of the development. We hold this proposed "tort" does not provide a claim upon which relief can be granted.

■ Negligence requires a duty, a subsequent breach of that duty, and injury that flows from the breach. *Peters v. Forster*, 804 N.E.2d 736, 738 (Ind.2004). A duty is "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *City of Muncie v. Weidner*, 831 N.E.2d 206, 211 (Ind.Ct.App.2005). Concerning duty, our Supreme Court has stated, "Duty is a question of law for the court to decide. Absent a duty, there can be no breach of duty and thus no negligence or liability based upon the breach." *Peters*, 804 N.E.2d at 738. The Court has also stated:

> Courts will generally find a duty where reasonable persons would recognize and agree that it exists. This analysis involves a balancing of three factors: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns.

*Heck v. Stoffer*, 786 N.E.2d 265, 268 (Ind. 2003) (citations omitted). These consider-ations guide our evaluation of Appellants' claim that Aldon owed them a duty to ensure that their successors in interest adequately observe the real covenants associated with the Fieldstone Crossing development.

We note that the Indiana Supreme Court addressed an analogous issue in *Greg Allen Construction Co., Inc. v. Estelle*, 798 N.E.2d 171, 172 (Ind.2003), where a number of plaintiffs desired to sue in tort for a breach of contract claim. In *Greg Allen*, the plaintiffs sued a construction company in negligence for its failure to satisfy its obligations under a contract to provide home renovations. *Id.* The plaintiffs attempted to argue that their claim sounded in tort; however, the Indiana Supreme Court was not persuaded. *Id.* at 174–75. The Court's main consideration was determining the source of the defendant's duty to act. *Id.* If that duty arises from a contract, then "tort law should not interfere." *Id.* at 175. "Typically, damages recoverable in tort from negligence in carrying out the contract will be for injury to person or physical damage to property, and thus 'economic loss' will usually not be recoverable." *Id.* at 175; *see Essex v. Ryan*, 446 N.E.2d 368, 373 (Ind. Ct. of App.1983) (the possibility of personal injury to consumers is a weighty factor in allowing remote plaintiffs to sue in tort).[1]

Herein, we shall consider the three duty elements based on the facts before us. First, we examine the relationship between the parties. In the instant case, the relationship between Aldon and Appellants

1. The Indiana Supreme Court illustrated its determination as follows: "Allen could be individually liable to the Estelles if he negligently burned their house down while working with a blowtorch whether this work was on the Estelles' house under a contract with them, or the project was a neighbor's house and had no contractual relationship with the Estelles. The reason is that this negligence goes beyond failure to perform up to contractual standards, and constitutes a tort even if there were no contractual relationship ...." *Greg Allen*, 798 N.E.2d at 175.

was entirely contractual. Aldon had contracted with Appellants to purchase lots in Fieldstone Crossing, a subdivision it was developing. Appellants signed identical, standard contracts that detailed the purchase price for each lot and home, and the manner of payment. Aldon, after developing Appellants' lots to Appellants' specifications, sold its remaining interest in the subdivision development to Endor, another housing developer. At this point, Aldon's relationship with Appellants had largely terminated.

▄ Second, we must determine the reasonable foreseeability of the type of harm that Appellants alleged they have suffered. We note that the imposition of a duty "is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm." *Williams v. Cingular Wireless*, 809 N.E.2d 473, 477 (Ind.Ct.App.2004) ("the foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence"). The sale of a partially completed subdivision development by one housing developer to another, complete with real covenants restricting the use and development of that land, does not necessarily pose the risk that the second developer will renege on his contractual obligations. Certainly, the seller of the development should obtain some information about the purchasing developer by way of the selling process that would provide some information about the ability of the purchasing developer to complete the subdivision while adhering to the real covenants. However, this knowledge gleaned from their communication does not necessarily imbue the seller with the requisite knowledge to foresee the possible economic harm to owners of lots that have already been developed within the subdivision.

Lastly, we note the public policy concerns that would be implicated by the extension of the type of duty that Appellants desire. "Various factors play into this policy consideration, including convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, and the moral blame attached to the wrongdoer." *Id.* at 478. We conclude that sound public policy counsels against the imposition of a duty on the part of housing developers to ensure that any subsequent owners of the property adhere to the real covenants. Such a duty on the part of prior developers would only serve to provide another avenue for recovery for plaintiffs when one already exists while simultaneously imposing an additional burden upon developers.

Currently, those who have been injured as a result of violations of real covenants can remedy the harm created by those violations under contract law. Such a cause of action focuses squarely upon the harmed party and its cause—the harmed property owner and the actions of the offending developer, respectively. Adding an additional cause of action under the law of tort would allow a harmed party to simultaneously hold the current developer and any prior developer liable for a single wrong, which is what Appellants have attempted to do here. Based on our analysis, we will not alter the current relationship between contract law and the law of torts.

On balance, the relationship between the parties, the foreseeability of harm, and sound public policy counsel against the extension of a duty to developers to insure that real covenants are adequately enforced upon subsequent developers. It should be noted that we are not removing Appellants' ability to recover for a harm that they may have experienced as a result of any poor quality of development in

Fieldstone Crossing. Rather, we hereby deny the proposed avenue for additional relief beyond what is necessary and prudent for Appellants to address any alleged harm they may have suffered.

■ In sum, we do not sanction the claim that there is an additional duty owed by the original contracting party, by way of a remedy in tort, to another for not sufficiently protecting that individual's interest from a possible breach by the successor to the contract when the injury is purely economic. This is especially true when a suitable defendant already can be found who is currently bound by the covenants that run with the land.[2] In the instant case, the sales agreements between the Paniaguas and Aldon, and the Cornetts and Aldon, gave rise to no obligation on the part of Aldon to monitor the continuing compliance of subsequent landowners with the land use covenants. The trial court properly granted the motion to dismiss as Appellants failed to assert a claim upon which relief could be granted.

## 2. Breach of Contract

■ Appellants further assert that Aldon breached its contractual obligation to ensure, through legal action, that the restrictive covenants on the Fieldstone Crossing subdivision were sufficiently enforced as to guarantee Endor's compliance. Specifically, Appellants assert that Aldon had a continuing contractual obligation to enforce the restrictive covenants upon Endor as a result of the original contractual relationship formed between the Paniaguas and Aldon, and the Cornetts and Al-

don. However, such a contractual relationship is markedly absent in this case.

■ Appellants assert *Columbia Club, Inc. v. American Fletcher Realty Corp.*, 720 N.E.2d 411, 418 (Ind.Ct.App.1999), *trans. denied*, as support for the proposition that real covenants allow for the suit of an original covenator in the event of breach. They rely upon a partial quotation from our statement that "[l]and use covenants create rights and duties between the original promising parties," *id.* at 418, and argue that the statement justifies creating a right of action in contract against an original covenanting party even after their contractual obligations have been assigned to another. Appellants' reading of *Columbia Club* is rendered misplaced by our subsequent statement that:

> Covenants are either personal, enforceable only by the original parties to an agreement, *or* they "run with the land." When covenants run with the land, they may be enforced *against remote grantees.*

*Id.* (citation omitted) (emphasis added). Thus, *Columbia Club* does not hold that covenants create a continuing cause of action against an original covenanting party for an alleged breach subsequent to the transfer of their interest. Instead, the cause of action lies with the successor in interest. *Id.* As such, the appropriate cause of action for any alleged violation of the real covenants associated with the Fieldstone Crossing subdivision lies against Aldon's successor in interest, Endor.

■ Appellants also argue that Aldon could not delegate or assign to Endor

---

**2.** Typically, the analysis of whether a covenant runs with the land contains two parts: (1) whether the covenant is one that may run with the land, and (2) whether the parties intended for the covenant to run with the land. *Columbia Club, Inc. v. American*

*Fletcher Realty Corp.*, 720 N.E.2d 411, 418 (Ind.Ct.App.1999). We have no doubt that the covenants in this matter clearly concerned land use in the Fieldstone Crossing subdivision and, given their number and detail, were intended to run with the land.

the contractual duties of Aldon under the original sales contracts for the properties in Unit #1 of the Fieldstone Crossing subdivision. We have held that as a general rule, a party may delegate its duties under contract to another except in circumstances where the contract is premised on a personal relationship, unique skill, or discretion. *Buckeye Ag–Center, Inc. v. Babchuk,* 533 N.E.2d 179, 180 (Ind.Ct.App. 1989). If a contract is so premised, then the duties it imposes are non-delegable. "The test is whether performance by the original obligor has been bargained for and is of the essence of the contract." *Id.* Of course, nearly every duty by an obligor can be argued to have been bargained for; however, the crux of this test is whether that obligation goes to very *essence* of the contract such that it marks a duty "of a personal nature." *Id.* In the instant case, such an obligation is wanting. When Appellants bargained with Aldon, they bargained for *property* and *homes.*[3] They sought to purchase two individual properties in Unit #1 on which homes would be built that would be in compliance with the restrictive covenants placed on that community. While it can be argued that Appellants did bargain for Aldon to construct this community, Aldon's status as the developer of the community was not of such an essential character as to render the contract incapable of being completed without Aldon as the builder. As such, this court cannot conclude that Aldon's personal development of the Fieldstone Crossing subdivision is so essential to the purchase agreements between Appellants and Aldon as to preclude the assignment of the obligation to Endor.

The necessary prerequisite to any breach of contract claim is the presence of a contractual obligation. The purchase agreements provided as part of the Second Amended Complaint fail to specify any personal requirement on the part of Aldon to ensure that its successors or assigns comply with the covenants that run with the land. Moreover, these agreements lack any provision that even insinuates a restriction on Aldon's disposition of its interest in the subdivision development. Aldon's subsequent sale of its property interest and, necessarily, its obligations to maintain a specified level of quality development was effectively transferred to Endor. As mentioned above, Appellants' remedy—on the merits of which we make no determination—lies in contract and against Endor.

For Appellants to have a breach of contract remedy available against Aldon would require that Aldon be personally obligated by contract and subsequently breached that obligation. However, during the only period of time where Appellants and Aldon had a contractual relationship such that a breach could have occurred, Aldon's behavior was described in the complaint as follows:

... while developing the Fieldstone Crossing subdivision, the Architectural Control Committee comprised of Aldon Builders, Inc., Bradley Gomez and Alfred E. Gomez, Jr., complied with the Fieldstone Crossing Restrictive Covenants by maintaining uniform high standards for quality of workmanship and materials, and harmony of external home design with existing structures.

(App.35). Thus, the complaint alleged that Aldon acted in compliance with its promise to ensure high standards of quality development during the only period in which it was required to do so. Therefore, the complaint fails to allege facts to support a

3. "Buyer hereby agrees to purchase the legal estate known as Lot #9 Fieldstone Crossing and more commonly known as 9347 Fillmore Ct....." (App.112).

breach of contract claim by Appellants against Aldon. Because Appellants failed to state a breach of contract claim upon which relief can be granted, the trial court did not err by granting Aldon's motion to dismiss.

Affirmed.

KIRSCH, C.J., and SULLIVAN, J., concur.