

ATTORNEY FOR APPELLANT

Gregg Romaine
Romaine Law
Fishers, Indiana

ATTORNEY FOR APPELLEE

Aladean M. DeRose
City of South Bend
Department of Law
South Bend, Indiana

I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Raymond Kerr, | December 23, 2015 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 71A03-1502-CT-49 |
| v. | Appeal from the St. Joseph Superior Court |
| City of South Bend, | The Honorable David C. Chapleau, Judge |
| *Appellee-Defendant* | Trial Court Cause No. 71D06-1208-CT-206 |

**Baker, Judge.**

[1] Raymond Kerr filed a complaint against the City of South Bend alleging that noxious gases from its sewer line had been forced into his home. Kerr alleged that this constituted nuisance, trespass, negligence, and inverse condemnation, resulting in injury to his person and his property. The trial court granted summary judgment in favor of the City, concluding that Kerr's claims were time-barred and that he was owed no duty. Finding that the trial court erred as to this latter point, we nevertheless find that Kerr's claims are barred by the statute of limitations insofar as they relate to injury to his health. We do find, however, that a portion of Kerr's claims may proceed insofar as they relate to damage to his property. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

## Facts[1]

[2] Kerr owns a home at 240 South Meade Street in South Bend (the City). A lateral sewer line runs under Kerr's home and connects it to a main sewer line. While the lateral line is Kerr's private property, the main line is owned and maintained by the City. At all times relevant to this case, the New Energy Corporation manufactured ethanol at a plant located approximately two miles southwest of Kerr's home. The City had issued New Energy a permit to dump various waste liquids into the City's main sewer line. These liquids ran through the main line and passed by Kerr's home before they eventually reached a

---

[1] We held oral argument in this case in Indianapolis on October 28, 2015. We would like to thank counsel for the excellent oral advocacy.

treatment plant to the north. New Energy has since filed for federal bankruptcy protection.

[3] In 2001, a relative of Kerr by the name of Leolia Kerr made a complaint to the City regarding odors coming into the home from the sewer. The City sent a contractor who made repairs to Kerr's lateral sewer line. Following this, however, fumes from the sewer continued to enter Kerr's home. At some point prior to 2004, Kerr contacted the City to discuss the issue. At the time, the City was aware of other complaints about odors coming from the sewer in and around Kerr's neighborhood. Kerr spoke with Deputy Mayor Lynne Coleman, who assured Kerr that the City would either fix the problem or buy his home and assist with his relocation costs. In 2005, Kerr moved away from his home as a result of the fumes, but he did not sell his home at that time.

[4] In late 2006, the City hired an environmental consulting firm to conduct a study on the odors coming from the sewer. The study found that discharge from New Energy's plant had a significant impact on the level of hydrogen sulfide present in the sewer and that this could account for the odor.[2] It also found that New Energy was adding ferrous chloride to the wastewater that "binds up the wastewater sulfide" and that City staff had found a layer of black slime covering the walls of several manholes in and around Kerr's neighborhood. Appellant's

---

[2] The study focused on hydrogen sulfide, but noted: "Whereas hydrogen sulfide may be one of the most prevalent odor compounds associated with domestic wastewater, it is not the only odor present. But it just happens to be the only odor parameter we can evaluate without doing a lot of time consuming and costly field sampling." Appellant's App. p. 41.

App. p. 42-43. The study made several recommendations to the City as to how to deal with these problems.[3]

[5] In March 2012, Kerr returned to his home to make some repairs to the property. While inside, he once again detected fumes entering his home from the sewer. On May 7, 2012, Kerr was diagnosed with chronic bronchitis. Tests revealed the presence of bacteria and fungi in Kerr's lungs. On May 18, 2012, Kerr was hospitalized for ketoacidosis and treated for undisclosed infections.

[6] Following his hospitalization, Kerr hired an environmental consultant to determine what types of gases were present in sewer lines connected to his home. The consultant measured the fumes emanating from two points in the sewer line, one just outside the home and the other underneath the bathroom. The consultant issued a report on July 18, 2012, which indicated that fumes in the sewer contained several carcinogens—benzene, chloroform, dibromochloromethane, 1,4-dichlorobenzene, methylene chloride, naphthalene, and tetrachloroethene—as well as high levels of other chemicals. The consultant made clear that the ambient air conditions within the home were not evaluated, but that the measurements from the sewer could offer insight into what may be emanating into the home. Appellant's App. p. 50-51.

[7] On June 5, 2012, Kerr filed a notice of tort claim with the City. Kerr claimed that the "management of the ethanol wastes in the sewers has negligently

_____

[3] It is not clear from the record whether the City followed the study's recommendations.

caused pollution to continuously trespass and act as a public and private nuisance," forcing him to move from his home. *Id.* at 29. Kerr claimed that the "loss has been continuous since the late 1980's." *Id.* at 30. The City denied Kerr's claim on June 11, 2012.

[8] On August 31, 2012, Kerr filed a complaint against the City claiming that the City negligently managed the sewer line, which resulted in fumes entering his home. Kerr also claimed that the fumes had rendered his home valueless, caused him personal injury, and diminished his earning capacity. The City filed a motion to dismiss Kerr's complaint. The trial court conducted a hearing on November 19, 2012, and reserved ruling on the matter, allowing both parties more time to conduct discovery. The trial court denied the City's motion to dismiss on December 20, 2012. The City filed an answer to Kerr's complaint on January 30, 2013.

[9] On April 30, 2014, the City filed a motion for summary judgment. Kerr filed a motion in response on November 3, 2014. The trial court conducted a hearing on the matter and, on January 20, 2015, issued its order granting the City's motion. The trial court found that Kerr had failed to give proper notice under the Indiana Tort Claims Act (ITCA) by failing to file his claim within 180 days of discovering the fumes. It also found that Kerr's claims were barred by all applicable statutes of limitations. Finally, the trial court found that Kerr had not established that the City owed him a duty. It reasoned that if any fumes had entered the home, they had entered through the lateral sewer line, which

was Kerr's private property and his responsibility to maintain. Kerr now appeals.

## Discussion and Decision

[10] Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). We review a grant or denial of summary judgment de novo, applying the same standard as the trial court. *City of Bloomington Utils. Dep't v. Walter*, 904 N.E.2d 346, 349 (Ind. Ct. App. 2009). All disputed facts and doubts as to the existence of material facts must be resolved in favor of the non-moving party. *Id.* "[A]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

[11] In this case, the trial court granted summary judgment in favor of the City, concluding that Kerr's claims were barred by the applicable statutes of limitations and for failure to provide notice in accordance with the ITCA. The trial court also found that Kerr's claims must fail because the City owed him no duty. We deal with this issue first.

## I. Duty

[12] To avoid summary judgment on his claim of negligence, Kerr was required to show a duty owed to him by the City. *City of Muncie ex rel. Muncie Fire Dep't. v.*

*Weidner*, 831 N.E.2d 206, 211 (Ind. Ct. App. 2005). Whether a defendant owes a plaintiff a duty is a question of law for the court to decide. *Id.* Courts will generally find a duty where reasonable persons would agree that one exists. *Id.* "A duty, when found to exist, is the duty to exercise reasonable care under the circumstances." *Id.*

[13] Here, the trial court framed the issue as whether the City owed Kerr a duty to maintain the lateral sewer line that connected Kerr's house to the main sewer line. The trial court then found that the City owed Kerr no such duty, as the lateral sewer line was Kerr's private property. In support of this finding, the trial court cited a provision of the ITCA noting that a governmental entity is not liable for losses that result from failures to inspect private property. Appellant's App. p. 23 (citing Ind. Code § 34-13-3-3(12)).

[14] However, the trial court's determination that the City is not responsible for the maintenance of Kerr's private property, while correct, misses the point. Kerr is not claiming that the City failed to properly maintain his lateral sewer line; rather, he is claiming that the City failed to properly maintain its own main sewer line, to which his line connects. Reply Br. p. 6. Appellate courts of this State have long recognized that municipalities have a duty to use reasonable care in the maintenance of their sewer lines, and it is this duty that Kerr believes was breached.[4] *City of Bloomington Utils. Dep't*, 904 N.E.2d at 353; *Murphy v.*

---

[4] The City also claims immunity, pointing to provisions of the ITCA immunizing governments from losses that result from the "issuance, denial, suspension, or revocation of, or failure to refuse to issue" a permit or

*City of Indianapolis*, 63 N.E.2d 469, 470, 158 Ind. 238 (1902); *City of South Bend v. Paxon*, 67 Ind. 228, 234-35 (1879).

[15] The City may be correct that Kerr contributed to his damages by failing to properly maintain his property. And were the factfinder to find that he has, he would be denied recovery for negligence, as "contributory negligence on the part of a plaintiff provides a complete defense to liability for the State and other government actors. . . ." *Kader v. State Dep't of Correction*, 1 N.E.3d 717, 728 (Ind. Ct. App. 2013); Ind. Code § 34-51-2-2. However, while these allegations of contributory negligence are relevant to the question of Kerr's eventual recovery, they are not relevant to threshold question of the City's duty to maintain its own property.[5]

## II. Timeliness of Kerr's Claims

[16] While Kerr's claims are not precluded because of any lack of duty on the City's part, they may nevertheless be time-barred. The trial court found that Kerr's action was barred by statutes of limitations as well as by his failure to comply

"failure to make an inspection . . . of any property, other than the property of a governmental entity." However, Kerr's claim does not relate to the issuance of a permit to New Energy or a failure to make an inspection of New Energy's plant, but rather to the City's failure to properly maintain its main sewer line. The City cites to no authority for the broad proposition that issuing a permit to a private entity would immunize a municipality from claims that the municipality negligently maintained its own property if such claims could in any way relate to the permit. Nor does it give us any reason to read the ITCA in this manner.

[5] The trial court appears to hold that a lack of duty on the part of the City would frustrate Kerr's claims for trespass, nuisance, and inverse condemnation as well. Once again, we find that any allegations that Kerr improperly maintained his lateral sewer line would not preclude these claims. *See Niagara Oil Co. v. Jackson*, 91 N.E. 825, 828, 48 Ind. App. 238 (1910) ("It is the duty of every person or public body to prevent a nuisance, and the fact that the person injured could, but does not, prevent damages to his property therefrom, is no defense either to an action at law or in equity.")

with the notice provisions of the ITCA. Kerr disagrees, arguing that because the injury that he claims is of a recurring nature—gases repeatedly entering his home—any statute of limitations or ITCA notice period renews upon each instance. Kerr also advances equitable theories of estoppel based on alleged statements made to him by Deputy Mayor Lynne Coleman. Kerr's claims encompass injury to both his health and his property, and we find it necessary to analyze these claims separately.

## A. Injury to Health

[17] Kerr claims that the City's failure to properly maintain its main sewer line has forced gases into his home, causing injury to his health. Indiana Code section 34-11-2-4 provides that actions for injury to person "must be commenced within (2) years after the cause of action accrues."

[18] Under what is known as the discovery rule, a cause of action accrues, and a statute of limitations begins to run, "when the plaintiff knew, or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Doe v. United Methodist Church*, 673 N.E.2d 839, 842 (Ind. Ct. App. 1996). This determination is a question of law. *Id.* Here, the trial court determined that Kerr was aware that the gases may have been injuring his health when he left his home in 2005, and that the limitations period began to run at this time. We agree.

[19] We are not required to determine what a person exercising ordinary diligence would have discovered in this situation, because Kerr himself has admitted that

he knew of potential health problems as early as 2005. In his notice of tort claim, he acknowledged that he "was forced from the Home in 2005 due to health issues associated with breathing the noxious fumes." Appellant's App. p. 29. Kerr's acknowledgment compels us to agree with the trial court that the limitations period for Kerr's personal injury claims began to run more than seven years before Kerr filed his complaint and that these claims are barred accordingly.[6]

## B. Injury to Property

[20] We reach a different conclusion, however, insofar as Kerr seeks damages to compensate for any damage to or loss of use and enjoyment of his property that may have resulted from the gases entering his home. In accordance with our holding in *Strickdorn v. Zook*, we find that the limitations period began anew each time the gases entered. 957 N.E.2d 1014 (Ind. Ct. App. 2011).

[21] The facts of *Strickdorn* are remarkably similar to the case before us now. In *Strickdorn*, the Strickdorns had been forced to leave their property as a result of the smell coming from their neighbor's dairy farm. *Id.* at 1016. The Strickdorns filed a complaint against their neighbors—the Lantzes, who had owned the farm from 2003 to 2005, and the Zooks, who had owned it from 2005 to 2009.

---

[6] Kerr has framed his claims as those of trespass, nuisance, negligence, and inverse condemnation, all of which include reference to personal injury. Appellant's App. p. 32-34. Given that the statute of limitations applies to all actions for personal injury, our holding that Kerr's personal injury claims are barred by the statute applies to all claims, however framed, to the extent that Kerr seeks compensation for injury to his health.

The Strickdorns alleged that their neighbors had negligently stored and disposed of animal waste, which constituted a nuisance and a continuing trespass, and caused injury to person and property. *Id.* at 1018-19. The complaint was filed six years and one month after their neighbors commenced dairy operations. *Id.* at 1018.

[22] This Court first distinguished the Strickdorns' negligence claim from their nuisance and trespass claims. *Id.* at 1021-22. We noted that the two-year statutory limitation period applied to their negligence claim, as it was "readily apparent that the Strickdorns [were] seeking damages for personal injury and *not* damage to their property, insofar as the negligence counts [were] concerned." *Id.* at 1021 (emphasis original). We then held that, because "the Lantzes sold the property to the Zooks in April 2005, the claims for personal injury had accrued and were ascertainable." *Id.* Consequently, the Strickdorns' personal injury claims were barred as a matter of law. *Id.*

[23] As to their nuisance and trespass claims, we noted that:

> The distinction between an injury caused by a nuisance that is "permanent" or "original," and one that is considered temporary, transient, continuing, or recurring, is critical to determining when the statute of limitations period for a nuisance action begins to run. An intermittent, non-abated nuisance is a new and separate injury that gives rise to a new cause of action. Successive actions may be maintained so long as the nuisance is permitted to continue, in which damages may be recovered for all injury occasioned prior to the commencement of the action and within the statute of limitations, not extending back of a former recovery. When the nuisance is a continuing abatable one, an

action that is prosecuted to a finality will not bar another action to recover for harm sustained in succeeding years, when it is made to appear that the nuisance has not been abated and its continuance has resulted in further injury. Similarly, a continued trespass that causes harm triggers a new limitations period each time it occurs.

*Id.* at 1022 (citations omitted).

[24] We then found that the nuisance odors that the Strickdorns complained of were the result of their neighbor's repeated manure spills, improper spreading of waste, and refusal to cover their manure pit. *Id.* at 1023. These acts constituted continuing instances of nuisance and trespass, which triggered new limitations periods. *Id.* As to the manure pit, we found that it "became a temporary, continuing nuisance through its use, and not a permanent one from its mere existence." *Id*. Accordingly, we held that the Strickdorns' claims for nuisance and trespass were not barred by the statute of limitations. *Id.*

[25] The nuisance odors at issue in *Strickdorn* are directly analogous to the nuisance gases Kerr claims to have been injured by here. They are the result, Kerr alleges, of the City's continued failure to properly maintain its main sewer line and as such, trigger new limitations periods each time they damage or interfere with the use and enjoyment of his property.

[26] We agree with Kerr that new limitations periods are triggered as gases continue to cause harm. At this point, however, the notice provisions of the ITCA operate to limit Kerr's recovery. Indiana Code section 34-13-3-8 provides that tort claims against political subdivisions are barred unless notice is given to the

subdivision's governing body within 180 days after the loss occurs. Because in this case Kerr has suffered recurring losses, rather than one individual loss, his claim will not be entirely barred, but his recovery will be limited to losses which occurred beginning 180 days before he filed his notice of tort claim.

[27] Kerr argues that he should be allowed to recover for injuries stemming from a much longer period of time because he has substantially complied with ITCA's notice requirement and that the City has had notice of the problem for years now. Appellant's Br. p. 14-15. We have previously held that "liberal application of the requirements of the ITCA notice statute is proper in order to avoid denying plaintiffs an opportunity to bring a claim where the purpose of the statute has been satisfied." *Brown v. Alexander*, 876 N.E.2d 376, 381 (Ind. Ct. App. 2007).

[28] As to what constitutes substantial compliance and its purpose, our Supreme Court has recently stated:

> Substantial compliance with the statutory notice requirements is sufficient when the purpose of the notice requirement is satisfied. The purposes of the notice statute include informing the officials of the political subdivision with reasonable certainty of the accident and surrounding circumstances so that the political subdivision may investigate, determine its possible liability, and prepare a defense to the claim. What constitutes substantial compliance, while not a question of fact but one of law, is a fact-sensitive determination. The crucial consideration is whether the notice supplied by the claimant of his intent to take legal action contains sufficient information for the city to ascertain the full nature of the claim against it so that it can determine its liability and prepare a defense. But mere actual

knowledge of an occurrence, even when coupled with routine investigation, does not constitute substantial compliance.

*Schoettmer v. Wright*, 992 N.E.2d 702, 707 (Ind. 2013) (quotations omitted).

[29] Accordingly, we cannot find that Kerr has substantially complied with the ITCA's notice requirement in this case. While Kerr certainly notified the City as to the odors entering his home, he did not notify the City that he intended to take legal action until 2012. As the City was not aware that Kerr planned on filing a claim against it until this date, it was certainly not given an opportunity to ascertain the nature of Kerr's claim and to prepare a defense to that claim. Therefore, we cannot find that Kerr's prior communications with the City regarding this issue served the purpose behind the ITCA's notice requirement.

[30] Kerr also points to the equitable doctrine of fraudulent concealment, arguing that it should apply in this case to estop the City from asserting that Kerr's claims are time-barred. Kerr believes that his communications with Deputy Mayor Coleman may amount to fraudulent concealment on the City's part and that this is a question of fact for the jury.

[31] We find the doctrine of fraudulent concealment inapplicable to the facts of this case.

> Fraudulent concealment is an equitable doctrine which operates to prevent a defendant from asserting the statute of limitations as a bar to a claim where the defendant, by his own actions, prevents the plaintiff from obtaining the knowledge necessary to pursue a claim. When this occurs, equity will toll the statute of

> limitations until the equitable grounds cease to operate as a
> reason for delay.

*Sagarin v. City of Bloomington*, 932 N.E.2d 739, 746 (Ind. Ct. App. 2010).

[32] Although Kerr is correct that whether fraudulent concealment applies is usually a question to be determined by the factfinder, Kerr has failed to allege that anything was concealed in this case. Kerr's claims are predicated on his assertion that fumes have unlawfully entered his home. He was aware of these fumes for years and he does not claim that Deputy Mayor Coleman acted in any way to conceal their presence. To the extent that other equitable tolling doctrines may be available in this case, Kerr has not directed our attention to them, and we will not formulate an argument on his behalf. *See* Ind. Appellate Rule 46(A)(8)(a).

[33] The judgment of the trial court is affirmed in part and reversed in part. On remand, Kerr's claim against the City may proceed insofar as it relates to damage to or loss of the use and enjoyment of his property beginning 180 days prior to the filing of his notice of tort claim.

Riley, J., and Brown, J., concur.