**Eric STICKDORN and Lisa Stickdorn, Appellants–Plaintiffs,**

v.

**Elam B. ZOOK, Sarah F. Zook, Samuel L. Lantz and Mattie Z. Lantz, Appellees–Defendants.**

No. 89A01–1012–CT–670.

Court of Appeals of Indiana.

Nov. 28, 2011.

---

Kim E. Ferraro, Legal Environmental Aid Foundation, Valparaiso, IN, Attorney for Appellant.

Gary H. Baise, OFW Law, Washington, D.C., Ronald L. Cross, Boston Bever Kling Cross & Chidester, Richmond, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Two neighboring farmers were conducting business near Cambridge City in Wayne County. The defendants built their dairy in 2003 that included a milking parlor about fifteen feet from the plaintiffs' house. When the defendants emptied a manure pit on the farm in early 2004, the stench of rotten eggs and raw sewage permeated the plaintiffs' home. The plaintiffs became physically ill, and a stream that crossed their property became polluted. The defendants repeatedly and continuously emptied the manure pit at various times over the next several years until April 2005, when they sold their farm. Because the plaintiffs did not file their cause of action for negligence, trespass, and nuisance until 2009, the defendants are entitled to summary judgment with regard to the negligence and personal injury claims. However, the nuisance and trespass actions survive.

Appellants-plaintiffs Eric and Lisa Stickdorn (the Stickdorns) appeal the trial court's grant of summary judgment in favor of the appellees-defendants Samuel and Mattie Lantz (collectively, the Lantzes), regarding the counts of negligence, trespass, and nuisance, that they filed against the Lantzes. The Stickdorns argue that the trial court erred in determining that either the two-year or six-year statutes of limitations barred all of their claims.

We conclude that the trial court properly determined that the Stickdorns' personal injury claims are barred by the two-year statute of limitations. However, we reverse the grant of summary judgment for the Lantzes' with regard to the nuisance and trespass counts. Thus, we affirm in part, reverse in part, and remand for further proceedings with respect to the trespass and nuisance counts.

## FACTS[1]

The Stickdorns own a 120–acre farm in Wayne County, where they have resided, farmed, and raised cattle since 1994. Prior to 1994, they lived on a smaller farm in Charlottsville, where they farmed and raised livestock since 1989. In light of their farming experiences, the Stickdorns generally tended to be unaffected by fumes and odors that are known to be associated with animals, including dairy operations.

In 2003, the Lantzes constructed a dairy on the property that was adjacent to the

---

1. We heard oral argument in this case on November 1, 2011, in Indianapolis. We commend counsel for their outstanding oral and written presentations.

Stickdorns' farm. The dairy included a main building with a milking parlor approximately fifteen feet uphill from the Stickdorns' residence. From 1994 until the dairy was built, the land next to the Stickdorns' property was used primarily to grow row crops that included corn and soy beans. During that time, the Stickdorns did not notice any unusual odors or experience any problems with the prior owner's use of the adjacent property.

The Lantzes commenced their dairy and milking operations on October 14, 2003. Soon thereafter, the Stickdorns detected odors emanating from the Lantzes' property that were, at first, nothing more than typical smells generated by a livestock farm. However, beginning in mid November 2003, the Stickdorns noticed that the odors were increasing and were more pungent than before. They observed that the Lantzes kept the barn curtains open while their animals were confined and assumed that this was probably the source of the increasing odors because of the prevailing wind directions and proximity of the Lantzes' barn to their home.

Eric contacted the Lantzes about the odors and requested them to shut their barn curtains when the winds were blowing from the west. The Lantzes refused to do so. Sometime in February or March 2004, the Lantzes emptied their manure pit for the first time and spread the waste across the frozen, snow-covered ground. The odors from the pit invaded the Stickdorns' home with the smell of rotten eggs and raw sewage. Samuel acknowledged that the first time they hauled manure, it "did stink more than usual." Appellant's App. p. 44.

The fumes made both of the Stickdorns dizzy, confused, and nauseous. They also experienced headaches, and Lisa gagged and vomited. Eric informed Samuel how sick he and Lisa had become from the odors and gases. Eric also advised Samuel that applying manure to frozen ground could cause the substance to run into the streams that crossed their property. However, the Lantzes took no action.

On March 17, 2004, Samuel emptied the pit and spilled manure onto the snow-covered ground. The spill caused one of the streams that crosses the Stickdorns' property to become murky and foamy with a foul odor. In response to a telephone call that Eric made, a representative from the Indiana Department of Environmental Management (IDEM) tested the stream and found elevated ammonia-nitrogen levels and advised Eric that the water was unfit for his cattle to drink.

The Lantzes continued to empty the manure pit and spread it across their land without regard to wind, weather, or soil conditions. On each occasion, the Stickdorns experienced severe headaches, nausea, vomiting, confusion, shortness of breath, burning, swelling and irritation of the eyes, nose, face, lips tongue and gums. Eric's physician, Dr. Scott Capen, confirmed that the Stickdorns' "symptoms and pattern of occurrence [were] consistent with exposure to hydrogen sulfide gas, which is produced in the manure pits of confined animal feeding operations." Appellants' App. pp. 53–54.

On September 18, 2004, the Lantzes caused a waste spill contaminating a stream that crossed the Stickdorns' property. Following an investigation, the IDEM representatives determined that the spill increased the ammonia-nitrate levels that "settled to form putrescent or otherwise objectionable deposits, in an amount sufficient to be unsightly or deleterious, that produced color, visible oil sheen, odor, or other conditions in such a degree to create a nuisance." *Id.* at 63. The stream was polluted this time from field tile that Samuel had installed. Samuel

knew that the parlor waste would drain directly into the stream that flows through the Stickdorns' property.

Randy Jones of IDEM informed the Lantzes that they would have to change their manure handling practices, including "where to spread, how much to spread, needing to take manure and soil samples, put a cover on the pit, stay away from property lines so many feet, . . . to haul manure when the wind is in the right direction, get rid of dead animals, and etc." *Id.* at 43–44. Jones also informed the Lantzes that "a bigger manure storage system" was required. *Id.* at 45. Nevertheless, Samuel did not believe that it was necessary to change their manure handling practices in any way.

The Stickdorns eventually sought refuge from the intolerable odors at night by sleeping in their truck, the basement of a local church and, on occasion, at the home of a friend. In May 2004, they began sleeping in a camper. By the fall of 2004, the Stickdorns moved to an apartment. The Stickdorns returned to the property only to care for their own animals.

Eric made repeated requests to Samuel that he cover the manure pit and refrain from emptying the pit or land applying waste when the winds blew from the west. On October 1, 2004, Eric sent a letter to Samuel, stating:

[C]ommencing on 17 October 2003, the operation of your dairy . . . has been and continues to be, injurious to our health, offensive to our senses, and is an obstruction to the free use of our property interfering with the comfortable enjoyment of our lives.

It is our sincere hope that you will acknowledge the hardship that your current operating practices have caused us, polluting both our air and our water, so as to prevent us from the normal use of our home and our farm, and that you will make the necessary changes to your operation allowing us once again to live in our home and use the waters in our streams.

Appellant's App. p. 67.

Samuel dismissed the pleas, even though he knew that the Stickdorns had vacated their residence. On April 12, 2005, the Lantzes sold the dairy operation to the Zooks, who continued to store, handle, and dispose of animal waste in the same manner as did the Lantzes. After failed attempts to convince the Zooks to implement various manure management practices to reduce odors and prevent spills, the Stickdorns filed an action against both the Lantzes and the Zooks on November 12, 2009. The complaint was filed six years and one month after the Lantzes had commenced dairy operations at their farm.

The Stickdorns alleged, among other things, that

30. The Defendants have not implemented any of the agreed to measures or taken any other steps to reduce air emissions and odors, protect ground water, and abate nuisance conditions at the Zook property. Indeed, water quality testing performed on August 34, 2009 and again on October 23, 2009 revealed that animal waste form the Zook property caused E. coli contamination of streams that traverse the Stickdorn property at levels greatly exceeding water quality standards (e.g. 58,000 colonies/100 ml). Dangerous levels of ammonia, nitrogen and total suspended solids were found as well.

31. To date, the Stickdorns are unable to live in their home on the Stickdorn property due to adverse health conditions and symptoms caused by the Defendants' unreasonable animal waste management practices.

Appellants' App. p. 19.

The Stickdorns alleged in Count I of the complaint that the Zooks' and Lantzes'

past and ongoing animal waste storage, disposal, and land application activities violated numerous state laws and constituted a nuisance under Indiana Code section 32–30–6–6. Thus:

37. As a direct and proximate result of the nuisance created by Defendants' past and continued negligent animal waste storage, disposal and land application activities and operations, the Plaintiffs have been injured and sustained personal property and other pecuniary damages, and will in the future continue to suffer injury to their property and persons if Defendants' nuisance activities are not abated.

*Id.* at 20. Counts II and III and V alleged that the defendants were negligent, negligent per se, and grossly negligent because they, among other things,

c. failed to design, construct, maintain, manage, operate, direct and/or control animal feeding operations including but not limited to animal waste storage, land application and disposal activities on the … property in a reasonable manner and condition so as not to substantially injure the interests of adjoining land owners including Plaintiffs herein.

*Id.* at 22.

Count IV alleged that the Lantzes' conduct constituted a continuing trespass. Moreover, the Stickdorns claimed that they were entitled to punitive damages because the harm resulted from the Lantzes' "willful and wanton acts or omissions or gross negligence." *Id.* at 25. In sum, the Stickdorns requested compensatory and punitive damages pursuant to Indiana Code section 34–51–3–4, and for injunctive relief to abate the nuisance and trespass.

On February 26, 2010, the Lantzes filed a motion for summary judgment, contending that the Stickdorns' negligence claims were barred under the two-year statute of limitations in accordance with Indiana Code section 34–11–2–4. They also argued that the allegations of nuisance and trespass were barred by the six-year statute of limitations set forth in Indiana Code section 34–11–2–7.

Following a hearing, the trial court granted the Lantzes' motion for summary judgment on November 23, 2010, concluding that there were no genuine issues of material fact on the issue of the statute of limitations. The trial court determined that the two-year statute of limitations barred the negligence claims, and the six-year statute barred the nuisance and trespass claims. More particularly, the order granting summary judgment provided in relevant part that

The Stickdorns … allege that the [Lantzes] emptied the manure slurry pit for the first time on February 17, 2004 and every thirty … days thereafter. The allegation is that the pit is emptied and the manure spread constantly every thirty … days. The regularity of this recurrence—even as alleged by the Stickdorns themselves—continued over a protracted period of time, and the nature of the alleged damage cause, renders the nuisance to become the permanent variety. Thus the statute of limitations, as stated in *Dolph* [*v. Mangus,* 400 N.E.2d 189 (Ind.Ct.App.1980)], should commence to run upon the permanent injury when its permanence is discernable. Here, the permanent injury was discernable as of October, 2003, as stated in the Stickdorn's own Complaint as well as the Stickdorn letter to the [Lantzes] of October 1, 2004.

Thus, even the six … year statute of limitations of I.C. 34–11–2–7 has been exceeded. I.C. 34–11–2–7 provides in relevant part that "actions for injuries to property other than personal property … must be commenced within six …

years after the cause of action accrues." The Stickdorn[s'] causes of action for nuisance and trespass are time barred by the six ... year statute of limitations as their cause of action accrued in October, 2003 and their Complaint was not filed until November 12, 2009.

Moreover, even if somehow the negligence, negligence per se, and gross negligence claims are governed by the six ... year statute of limitations (which this Court deems they are not), they are time barred because such actions, likewise, accrued in October, 2003 and the Complaint was not filed until November 12, 2009.

Thus, the Complaint filed by the Stickdorns on November 12, 2009 is time barred by the statute of limitations. There are no genuine issues of material fact and Defendants, [the Lantzes] are entitled to judgment as a matter of law. Defendants Lantz also raise a second theory upon which they contend that they are entitled to summary judgment. Defendants argue that on April 12, 2005, [the Lantzes] sold the property on which the dairy farm operated and, as a result, they are not responsible for the design, construction, maintenance, or operation of the dairy. The Court further finds that as summary judgment is granted on the issue of the applicable statute of limitations and the complaint being time barred, that it need not at this time rule upon this alternative theory.

Appellants' Br.[2] The Stickdorns now appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

We review a grant of summary judgment using the same standard as the trial court. *Citizens State Bank of New Castle v. Countrywide Home Loans*, 949 N.E.2d 1195, 1199 (Ind.2011). That is, we will affirm where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law based only on the facts supported by designated evidence. *Neu v. Gibson*, 928 N.E.2d 556, 559–60 (Ind.2010). We construe all facts and reasonable inferences drawn from them in favor of the non-moving party. *Citizens State Bank of New Castle*, 949 N.E.2d at 1199.

We also note that when, as here, the trial court's summary judgment order contains findings of fact and conclusions of law, we are not bound by the findings and conclusions, though they aid our review by providing the reasons for the trial court's decision. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996).

### II. The Stickdorns' Contentions

#### A. Negligence Claims

 The Stickdorns acknowledge that a two-year statute of limitations period applies to their personal injury claims. However, they contend that the designated evidence sufficiently creates a genuine issue of material fact that the Lantzes' negligent conduct through April 2005 caused harm to their real property, thus making a six-year statute of limitations applicable to their negligence and personal injury claims. The Stickdorns also assert that the trial court erred in determining that their injuries were "permanent" and had accrued in October 2003. Appellants' Br. p. 20.

 The determination of when a cause of action accrues is generally a question of law. *Runkle v. Runkle*, 916 N.E.2d

---

**2.** Although the Stickdorns have attached a copy of the trial court's order to their Stickdorns' appellate brief, the pages are not numbered. The order is also not included in the appendix.

184, 192 (Ind.Ct.App.2009). However, when application of a statute of limitation rests on questions of fact, it is generally an issue for a jury to decide. *Id.* When a statute of limitations defense is asserted, the party moving for summary judgment must first make a "prima facie showing that the action was commenced outside of the statutory period" and, then the "non-movant has the burden of establishing an issue of material fact material to a theory that avoids the affirmative defense." *Id.* Statutes of limitation are favored because they afford security against stale claims and promote the peace and welfare of society. *Id.* at 191. A statute of limitations defense is particularly appropriate for summary judgment determination. *Id.* Finally, we note that the applicable statute of limitations is ascertained by identifying the nature or substance of the cause of action, rather than by the form of the pleadings. *Whitehouse v. Quinn,* 477 N.E.2d 270, 273 (Ind.1985).

Indiana Code section 34–11–2–4 provides that "an action for injury to person or character, [or] (2) injury to personal property ... must be commenced within two (2) years after the cause of action accrues."

The Stickdorns alleged in paragraph 14 of the complaint that

> The noxious odors and harmful gases that emanate from the manure slurry pit on the Zook property have and continue to cause the Stickdorns to suffer from adverse health symptoms including dizziness, nausea, choking, headaches, shortness of breath ... —symptoms that abate when the Stickdorns leave their home for 2–3 days.

And paragraph 17 states:

> Due to the severity of adverse symptons caused from exposure to harmful levels of hydrogen sulfide, ammonia, volatile organic compounds, endotoxin, and par-

ticulate matter form the AFO constructed, operated and maintained on the Zook property, the Stickdorns were forced to move away from their home on the [Stickdorn] property in 2004. To date, they return only to care for their own animals.

Appellants' App. p. 15–16.

■ In light of the above, the Stickdorns maintain that their personal injury claims still survive in light of our Supreme Court's pronouncement that "claims for waste and *negligence* related to real property are governed by a six-year statute of limitation." *Pflanz v. Foster,* 888 N.E.2d 756, 760 (Ind.2008) (emphasis in original). However, it is readily apparent that the Stickdorns are seeking damages for personal injury and *not* damage to their property, insofar as the negligence counts are concerned. Put another way, none of the allegations asserting negligence show environmental contamination or prohibit farming activity.

Because the applicable statute of limitations is ascertained by the nature or substance of the cause of action, the two-year statute of limitations applies to the negligence and gross negligence counts set forth in the complaint. *Whitehouse,* 477 N.E.2d at 273.

As noted above, the Lantzes sold the property to the Zooks in April 2005, the claims for personal injury had accrued and were ascertainable, and the complaint was not filed until November 12, 2009. Thus, because the two-year statute of limitations controls with respect to the negligence claims, the Stickdorns' personal injury claims are barred as a matter of law. Therefore, we conclude that the trial court correctly granted the Lantzes motion for summary judgment with regard to the negligence claims.[3]

## B. Nuisance and Trespass Claims

The Stickdorns argue that the trial court erroneously determined that their claims for nuisance and trespass were barred because a six-year statute of limitations applies. The Stickdorns contend that their complaint seeks "damages from and abatement of conditions that have and continue to cause harm to their real property and interference with their property rights," appellants' br. p. 18, and the trial court erroneously concluded that the injuries were "permanent" in October 2003. *Id.* at 20. The Stickdorns assert that their injuries were the result of the Lantzes' repeated, wrongful conduct through April 2005.

Indiana Code section 34–11–2–7 provides that the following actions must be commenced within six years after the cause of action accrues:

> (3) Actions for injuries to property, other than personal property, damages for detention of personal property, and for recovering possessions of personal property.

 The distinction between an injury caused by a nuisance that is "permanent" or "original," and one that is considered temporary, transient, continuing, or recurring, is critical to determining when the statute of limitations period for a nuisance action begins to run. *Keane v. Pachter*, 598 N.E.2d 1067, 1072 (Ind.Ct.App. 1992). An intermittent, non-abated nuisance is a new and separate injury that gives rise to a new cause of action. Successive actions may be maintained so long as the nuisance is permitted to continue, in which damages may be recovered for all injury occasioned prior to the commencement of the action and within the statute of limitations, not extending back of a former recovery. *Ind. Pipe Line Co. v. Christensen*, 188 Ind. 400, 403, 123 N.E. 789, 790 (1919).[4] When the nuisance is a continuing abatable one, an action that is prosecuted to a finality will not bar another action to recover for harm sustained in succeeding years, when it is made to appear that the nuisance has not been abated and its continuance has resulted in further injury. *Ind. Pipe Line Co. v. Christensen*, 195 Ind. 106, 121, 143 N.E. 596, 600 (1924). Similarly, a continued trespass that causes harm triggers a new limitations period each time it occurs. *C & E Corp. v. Ramco Indus.*, 717 N.E.2d 642, 644 (Ind.Ct. App.1999).

To illustrate, in *Indiana Pipeline*, the evidence demonstrated that oil had leaked from a pipeline that damaged some cropland for several successive years. In 1924, our Supreme Court determined that each time oil leaked, a new cause of action arose. The damage award was upheld and after the verdict was affirmed, the pipeline leaked again. Once again, the landowner filed suit for nuisance, and this court, citing our Supreme Court's *Pipe Line* decision in 1924, affirmed the second verdict. Despite the fact that the landowner's suit involved the same defendant and the same pipeline, it was determined that the successive action was proper because "an action prosecuted to a finality will not bar another action ... when it is made to appear that the nuisance has not been

---

**3.** We express no opinion as to the viability of the Stickdorns' personal injury claims against the Zooks.

**4.** There are three reported *Indiana Pipe Line* cases: *Ind. Pipe Line v. Christensen*, 188 Ind. 400, 123 N.E. 789 (1919); *Ind. Pipe Line Co.* *v. Christensen*, 195 Ind. 106, 143 N.E. 596 (1924); and *Ind. Pipe Line Co. v. Christensen*, 94 Ind.App. 155, 180 N.E. 30 (1932). As explained above, these cases all dealt with the escape of oil that had spilled onto the plaintiff's property.

abated and its continuance has resulted in further inquiry." *Ind. Pipe Line Co. v. Christensen*, 94 Ind.App. 155, 180 N.E. 30, 31 (1932).

■ In accordance with the rules announced in the *Indiana Pipe Line* cases, the nuisance odors and contaminated streams from the Lantzes' repeated manure spills, improper spreading of the waste on their fields, and the refusal to put a cover on their manure pit amount to an intermittent, abatable nuisance. Each time that the odors and polluted streams affected the Stickdorns' property, the statute of limitations began anew. In short, we can glean from the designated evidence that the Stickdorns' damages were recurring and continuing and thus, the manure pit became a temporary, continuing nuisance through its use, and not a permanent one from its mere existence.

To further illustrate, we note that the trial court particularly emphasized the first sentence of the October 2004 letter in its summary judgment order that reveals the Stickdorns' recognition of the nuisance conditions from the previous year. However, another section of that correspondence addresses whether the nuisance conditions could have been reasonably abated by the Lantzes during that time. More specifically, the letter stated that

> At various times during the last 11 months, *and initially*, during direct conversation with you on 6 December, 2003, *we have informed you of our continued concerns for our health and well-being caused by your operation.*

Appellant's App. p. 67 (emphasis added).

In addition, the Stickdorns alleged in the Complaint that they sustained repeated harm as a result of the Lantzes' refusal to "change their manure storage, disposal and land application practices or otherwise implement measures to reduce noxious odors and harmful air emissions, protect ground water, and abate nuisance conditions" from October 2003 to April 2005. *Id.* at 17–18. In light of the designated evidence that was presented to the trial court, the majority of injuries that the Stickdorns allegedly sustained had not even occurred in October 2003. Indeed, Eric averred in his sworn affidavit that the manure pit was first emptied in February 2004. *Id.* at 29. And Samuel believed that the manure pit had been emptied only one month later. *Id.* at 43. Both of these dates fall within the six-year limitations period and the Stickdorns' claims for damages are consistent with their letter and Complaint that they filed. Put another way, the designated evidence establishes that the Lantzes refused to stop or change their waste storage, disposal and management practices that harmed them through April 2005. Thus, the statute of limitations did not preclude the Stickdorns from complaining about the continued instances of nuisance and trespass. *See May v. George*, 53 Ind.App. 259, 263, 101 N.E. 393, 394 (1913) (holding that if a nuisance continues from day to day and a fresh injury is created each day, there may still be a right of action for the injuries created within the last six years, though the original right of action has been lost).

Finally, we reject the Lantzes' reliance on *Doe v. United Methodist Church*, 673 N.E.2d 839, 842 (Ind.Ct.App.1997), where it was announced that "for a cause of action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable but only that ascertainable damage has occurred." It was established in *Doe* that the female victim was sixteen years old when a minister from the church commenced a sexual relationship with her. The abuse began in 1984 and continued until December 23, 1988, when Doe was twenty (20) years-old. Doe filed a cause of action against the church and

other defendants on February 1, 1993, which was approximately twenty (20) months after she had disclosed the relationship to her family and had undergone therapy sessions. Doe alleged in her complaint that the minister had committed nearly sixty acts of sexual battery and rape against her.

The trial court granted the church's motion for summary judgment, on the grounds that the two-year statute of limitations applied to her personal injury claims. We affirmed the trial court's ruling on appeal and observed that

> The sexual relationship ended in 1988 when Doe was twenty years-old. It is not possible that a reasonable person in Doe's position would not have understood, on some level, that the Minister's actions were wrong and had some connection to her current situation. Under Indiana's objective standard for the application of the discovery rule, we must conclude, as a matter of law, that in the exercise of ordinary diligence, Doe should have discovered that she had sustained injury as a result of Minister's abusive acts in excess of two years be-

fore her lawsuit was filed. Accordingly, her action is time-barred.

*Id.* at 845.

In this case, the Lantzes contend that the rationale in *Doe* should similarly preclude the actions for trespass and negligence because the Stickdorns *knew* of the Lantzes' dairy business as of October 2003. However, as discussed above, it was not the operation of the farm or the mere existence of the manure pit that gave rise to the Stickdorns' cause of action for nuisance and trespass. Rather, as we have already pointed out, it was the intermittent, recurring, and continuing spreading of the manure from early 2003 through April 2005 that caused the damages. Therefore, the rationale advanced in *Doe* is inapposite in these circumstances and the designated evidence does not support a conclusion that the Stickdorns' claims for nuisance and trespass were time-barred. As a result, we conclude that the trial court erred in granting summary judgment in the Lantzes' favor with regard to the trespass and nuisance claims.[5]

The judgment of the trial court is affirmed in part, reversed in part, and re-

---

**5.** At oral argument, the Lantzes alluded to the proposition that Right to Farm Act, which limits the circumstances under which an agricultural operation can become subject to a suit alleging a nuisance, precludes the Stickdorns' action. The Lantzes posit that the following provision controls:

> (d) An agricultural or industrial operation or any of its appurtenances is not and does not become a nuisance, private or public, by any changed conditions in the vicinity of the locality after the agricultural or industrial operation, as the case may be, *has been in operation continuously on the locality for more than one (1) year*. . . .

Ind.Code § 32–30–6–9(d) (emphasis added). We acknowledge that the purpose of the Right to Farm Act is, among other things, "to reduce the loss to the state of its agricultural resources by limiting the circumstances under which agricultural operations

may be deemed to be a nuisance." I.C. § 32–30–6–9(b). However, when examining the statutory provisions and the policy behind the Right to Farm Act, it is our view that it has no applicability to the manner in which two farmers, i.e., the Stickdorns and the Lantzes, conduct their operations. *See, e.g., Lindsey v. DeGroot*, 898 N.E.2d 1251 (Ind.Ct.App.2009) (concerning an action brought by homeowners against neighboring dairy owners for nuisance, negligence, trespass, criminal mischief, and intentional infliction of emotional distress, seeking to enjoin the continued operation of the dairy). Moreover, it is clear that the Right to Farm Act does not "apply if a nuisance results from the negligent operation of an agricultural or industrial operation or its appurtenances." I.C. § 32–30–6–9(a).

Thus, we reject the Lantzes' reliance on the Right to Farm Act in this instance.

manded for further proceedings consistent with this opinion.

KIRSCH, J., and MATHIAS, J., concur.