

FILED

Oct 03 2018, 5:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Erik S. Mroz
David A. Temple
Sean T. Devenney
Drewry Simmons Vornehm, LLP
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Brent W. Huber
Derek R. Molter
Kaitlyn J. Marschke
Ice Miller LLP
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Elkhart Foundry & Machine
Co., Inc.,

*Appellant-Defendant,*

v.

City of Elkhart Redevelopment
Commission for the City of
Elkhart,

*Appellee-Plaintiff*

October 3, 2018

Court of Appeals Case No.
20A03-1709-CT-2136

Appeal from the Elkhart Superior
Court

The Honorable Stephen R.
Bowers, Judge

Trial Court Cause No.
20D02-1602-CT-50

**Vaidik, Chief Judge.**

# Case Summary

[1] This case concerns the efforts of the City of Elkhart and its Redevelopment

Commission ("the City") to rehabilitate a former industrial site situated along

the Elkhart River in the city's downtown. The City has sued Elkhart Foundry & Machine Co. ("the Foundry"), which operated on the site until 2004. One of the statutes relied upon by the City is Indiana Code section 13-30-9-2, which took effect in 1998 and which, generally stated, provides that a person who cleans up a contaminated site can bring an "environmental legal action" (ELA) for the recovery of cleanup costs against a person who contributed to the contamination.

[2] At issue in this appeal is the meaning of a related statute, Indiana Code section 34-11-2-11.5, which took effect in 2011 and provides that the plaintiff in an ELA can seek to recover "[t]he costs incurred not more than ten (10) years before the date the action is brought, even if the person or any other person also incurred costs more than ten (10) years before the date the action is brought." The City contends that this is a statute of limitation requiring that an ELA be filed within ten years of the incurrence of the cost(s) sought to be recovered and that its ELA was timely under this provision. The Foundry, on the other hand, argues that Section 34-11-2-11.5 is merely a cap on the damages recoverable in an ELA. According to the Foundry, an ELA is subject to the six-year limitation period established by Indiana Code section 34-11-2-7(3) for "[a]ctions for injuries to property other than personal property," and the City's ELA is untimely under this provision. The trial court, in an excellent, 23-page order, agreed with the City that Section 34-11-2-11.5 is a statute of limitation and that its ELA was timely filed. We affirm the trial court in this and all other respects.

# Facts and Procedural History

[3]     The site at issue is located at 318 S. Elkhart Avenue in Elkhart.  Beginning in the early 1900s, the Foundry operated an iron foundry on the site.  The Foundry went out of business in 2004.  In 2007, the Foundry voluntarily dissolved as an Indiana corporation, and a subsidiary of one of the Foundry's creditors took ownership of the site through a court-appointed receiver.  The same year, the City began looking into purchasing the site and learned that it was contaminated.  (The record reflects some uncertainty as to when various city agencies learned about the contamination, but for purposes of this appeal the parties proceed as though the City learned in 2007.)  In 2010, the City purchased the site for $1,000,000 and began remediation work.

[4]     In February 2016, the City filed suit against the Foundry.  The City alleged that the Foundry caused the contamination and asserted: (1) an ELA under Indiana Code section 13-30-9-2; (2) claims under Indiana Code chapter 13-25-4, which the parties refer to as "mini-CERCLA" because of its relationship to the federal Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601-9675; and (3) a nuisance claim.  The Foundry filed a motion for summary judgment on all the City's claims.  After a hearing, the trial court granted the Foundry's motion as to the City's mini-CERCLA and nuisance claims but denied it as to the ELA.

[5]     The Foundry now appeals the denial of its motion as to the ELA, and the City cross-appeals the grant of the motion on its other claims.

# Discussion and Decision

We review motions for summary judgment de novo. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

# I. ELA

The Foundry contends that the trial court should have granted it summary judgment on the City's ELA. The filing of an ELA is allowed by Indiana Code section 13-30-9-2, which provides:

> A person may, regardless of whether the person caused or contributed to the release of a hazardous substance or petroleum into the surface or subsurface soil or groundwater that poses a risk to human health and the environment, bring an environmental legal action against a person that caused or contributed to the release to recover reasonable costs of a removal or remedial action involving the hazardous substances or petroleum.

Our Supreme Court has explained that the "overall purpose" of the legislation that authorized ELAs (Public Law 59-1997) was the rescue and redevelopment of "brownfields"—inactive or underused parcels of industrial or commercial real estate that are, or are perceived to be, contaminated. *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1281 (Ind. 2009). The Court added:

> [T]he legislature enacted the ELA statute to shift the financial burden of environmental remediation to the parties responsible for creating contaminations. In effect, this scheme creates an incentive for potential buyers of contaminated land who might be deterred by the substantial costs to clean up the land, thus

> preventing not only the cleanup but also redevelopment and economic renewal.

*Id.* at 1284.

[8] In seeking summary judgment on the City's ELA, the Foundry argued that such an action is subject to the six-year limitation period established by Indiana Code section 34-11-2-7(3) for "[a]ctions for injuries to property other than personal property," that this six-year period began to run when the City learned of the contamination in 2007, and that the period therefore expired in 2013, making the City's 2016 action untimely. The trial court rejected that argument, concluding instead that a different provision, Indiana Code section 34-11-2-11.5, is the statute of limitation for an ELA and that the City's ELA was timely under this statute. We agree.

[9] A bit of history is in order. Our Supreme Court addressed a claim that an ELA was time-barred in *Cooper Industries*, which was decided in 2009, before Section 34-11-2-11.5 took effect. The parties did not agree on the applicable limitation period. Cooper Industries argued, as the Foundry does here, that it was the six-year period under Section 34-11-2-7(3). The City of South Bend asserted that it was the general "catch-all" limitation period of ten years established by Indiana Code section 34-11-1-2. The Court said it would "adopt six years as the applicable time period" for purposes of its discussion but made clear that there was no need to resolve the issue definitively "[b]ecause we find South Bend's ELA claim would survive under either proposed time period[.]" *Id.* at 1286,

1286 n.9. As such, the statute of limitation applicable to an ELA remained an open question.

[10] Two years after *Cooper Industries*, the legislature created Indiana Code section 34-11-2-11.5. *See* P.L. 154-2011, § 4. Subsection (b) of the statute provides that the plaintiff in an ELA brought on or after May 10, 2011, may seek to recover "(1) The costs incurred not more than ten (10) years before the date the action is brought, even if the person or any other person also incurred costs more than ten (10) years before the date the action is brought" and "(2) The costs incurred on or after the date the action is brought." Ind. Code § 34-11-2-11.5(b). In this case, the trial court ruled that this is a statute of limitation that gives a person ten years from the incurrence of cleanup costs to file an ELA. In other words, the court concluded that Section 34-11-2-11.5 was the legislature's answer to the question left open by our Supreme Court in *Cooper Industries*.

[11] In its appeal, the Foundry does not dispute that Section 34-11-2-11.5 applies to the City's ELA, given that the City filed suit after the statute went into effect. Rather, the Foundry asserts that the statute is merely a limit on the damages recoverable in an ELA, not a statute of limitation, and that the applicable limitation period is six years pursuant to Section 34-11-2-7(3), the general statute of limitation for injury to real property. The Foundry relies heavily on this Court's 2016 decision in *Schuchman/Samberg Investments, Inc. v. Hoosier Penn Oil Co.*, 58 N.E.3d 241 (Ind. Ct. App. 2016), *trans. denied*. There, the panel held that a plaintiff's ELA "seeking recovery of costs incurred to remediate its own property . . . is subject to the six-year statute of limitation set forth in I.C. § 34-

11-2-7." *Id*. at 250. On its way to that holding, the panel noted its belief that Section 34-11-2-11.5 is **not** a statute of limitation. Specifically, the panel suggested that the statute "says nothing of the time frame within which an ELA claim must be brought or the events that trigger the running of that period. Instead, it imposes a limitation on the types of damages recoverable in an ELA claim in the form of a ten-year look-back period." *Id.* at 246 n.5.

[12] The problem with the Foundry's reliance on the footnote in *Schuchman/Samberg Investments* is that, as the panel in that case acknowledged, Section 34-11-2-11.5 was "inapplicable" to the ELA at issue because the lawsuit was filed in 2009, two years before the enactment of the statute. *Id.* As such, the footnote was dicta and therefore nonprecedential. *See Henley v. State*, 881 N.E.2d 639, 648 (Ind. 2008). But even if the panel's analysis constitutes "persuasive authority," as the Foundry contends, our analysis of the statute differs.

[13] By stating that an ELA plaintiff can recover only "costs incurred not more than ten (10) years before the date the action is brought," I.C. § 34-11-2-11.5(b), the statute plainly says something about "the time frame within which an ELA claim must be brought" and "the events that trigger the running of that period," *see Schuchman/Samberg Invs.*, 58 N.E.3d at 246 n.5. Specifically, the statute means that if a person wants to recover a particular cleanup cost, they must bring an ELA within ten years of incurring the cost. Stated differently, as soon as a person incurs a cleanup cost, the ten-year period starts to run with respect to that cost. Therefore, while it is true that Section 34-11-2-11.5 does not include typical "statute of limitation" language stating when an action "must be

brought" (*see*, *e.g.*, Ind. Code § 34-11-2-1) or "must be commenced" (*see*, *e.g.*, Ind. Code § 34-11-2-5), it has the same effect.

[14] If the language of Section 34-11-2-11.5 left any doubt about whether the legislature intended to create a statute of limitation for ELAs, it was resolved by the legislature's decision to house the provision in Chapter 2 of Article 34-11 of the Indiana Code. When the legislature created Article 34-11 in 1998, it gave it the heading "Limitation of Actions." *See* P.L. 1-1998, § 6. In turn, it gave Chapter 34-11-2 the heading "Specific Statutes of Limitation," and it filled the chapter with statutes of limitation. *Id.* We are aware that these headings "are not part of the law and may be altered by the lawful compilers," Ind. Code § 1-1-1-5(f), but we are also aware that the legislature often omits headings altogether, so its inclusion of headings here is worth noting. In any event, even if we disregard the **headings** the legislature gave to Article 34-11 and Chapter 34-11-2, the fact that Section 34-11-2-11.5 was placed in Chapter 34-11-2, alongside numerous statutes of limitation, tells us that the legislature intended Section 34-11-2-11.5 to be read as a statute of limitation.

[15] The Foundry argues that if Section 34-11-2-11.5 is treated as a statute of limitation, "[a] plaintiff could get a new ten-year limitations period, stretching indefinitely into time, just by spending another dollar on alleged response costs." Appellant's Reply Br. p. 20. This is true, but it is also consistent with the language of the statute. Specifically, subsection (b)(1) contemplates not only the incurrence of cleanup costs during the ten years immediately preceding the filing of the ELA but also the possibility that the plaintiff "incurred costs

more than ten (10) years before the date the action is brought." Ind. Code § 34-11-2-11.5(b)(1). In other words, the legislature did not intend for the ten-year limitation period to start running, once and for all, when the plaintiff incurs its "first" cleanup cost. Rather, a new ten-year period starts to run with the incurrence of each additional cleanup cost. Of course, if the plaintiff waits more than ten years from the incurrence of certain cleanup costs to file its ELA, those costs will not be recoverable. By creating this ten-year cutoff, the legislature gave plaintiffs a significant incentive to (1) expedite cleanups and (2) file suit within ten years of the incurrence of the first cost. This scheme is also consistent with the purpose of allowing ELAs in the first place: to encourage cleanup (which leads to redevelopment and economic renewal) by shifting the financial burden to the parties responsible for creating contamination. *Cooper Indus.*, 899 N.E.2d at 1284. The longer a contaminated site sits vacant, the more important it becomes to allow a suit for the recovery of cleanup costs.

[16] As for the Foundry's contention that Section 34-11-2-11.5 is better read as a damages cap and that ELA plaintiffs should be required, pursuant to Section 34-11-2-7(3), to file suit within six years of learning about contamination, we make two observations. First, an ELA is an action for the recovery of cleanup costs, not an action for damage to real property. *See* Ind. Code § 13-30-9-2. As such, it would be counterintuitive for the limitation period to start running when the plaintiff merely learns of the contamination, as opposed to when the plaintiff actually incurs a cleanup cost. For those plaintiffs who do not incur any cleanup costs until more than six years after learning of contamination

(since transfers of contaminated land can take many years), an ELA would not be an option at all. In short, a cause of action for the recovery of cleanup costs does not accrue until a cleanup cost has been incurred. Second, if we were to agree with the Foundry, a plaintiff would recover ten years' worth of cleanup costs (as contemplated by Section 34-11-2-11.5) only in certain limited circumstances. The Foundry offers the hypothetical of a plaintiff who learns of contamination and begins incurring cleanup costs but does not learn until four or more years later that a particular defendant contributed to the contamination. The Foundry does not give us any reason to believe that the legislature had this scenario in mind when it enacted Section 34-11-2-11.5.

[17] For these reasons, we conclude that the trial court correctly concluded that Section 34-11-2-11.5 is the ELA statute of limitation and correctly denied the Foundry's motion for summary judgment as to the City's ELA.

# II. Mini-CERCLA

[18] The City cross-appeals the trial court's grant of summary judgment to the Foundry on the City's mini-CERCLA claims. Congress enacted CERCLA, 42 U.S.C. §§ 9601-9675, in 1980 "in response to the serious environmental and health risks posed by industrial pollution." *Burlington N. and Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009). "The Act was designed to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Id.* (citations omitted). Following the enactment of CERCLA, many states passed

"mini-CERCLA" statutes of their own. William W. Buzbee, *Brownfields, Environmental Federalism, and Institutional Determinism*, 21 Wm. & Mary Envtl. L. & Pol'y Rev. 1, 10 (1997). "State mini-CERCLA statutes usually share with the federal CERCLA law a broad liability scheme, empowering state officials to ensure that contaminated sites are remediated." *Id.*

[19] Indiana's mini-CERCLA, found at Indiana Code chapter 13-25-4, authorizes a variety of actions by the Indiana Department of Environmental Management (IDEM) and its representatives, including its commissioner, but not by other entities or individuals. The two sections relied upon by the City—Indiana Code sections 13-25-4-10(a) and 13-25-4-9(a)(1)—are no exceptions. Section 13-25-4-10(a) provides that "[t]he commissioner may proceed in the appropriate court to recover costs and damages for which a responsible person is liable to the state under [various CERCLA and mini-CERCLA provisions]." Likewise, Section 13-25-4-9(a)(1) provides that "[t]he commissioner may proceed in court, by appropriate action, to . . . compel a responsible person to undertake a removal or remedial action with respect to a release or threatened release of a hazardous substance from a facility or site in Indiana[.]"

[20] The City acknowledges that these two statutes, like the rest of Indiana's mini-CERCLA, contemplate action by IDEM, but it asserts that Indiana Code section 13-30-1-1 (the "private-attorney-general statute") permits it to "stand[] in the shoes of IDEM." Appellee/Cross-Appellant's Br. p. 23. The private-attorney-general statute provides:

Under this chapter:

(1) the attorney general;

(2) a state, city, town, county, or local agency or officer vested with the authority to seek judicial relief;

(3) a citizen of Indiana; or

(4) a corporation, a limited liability company, a partnership, or an association maintaining an office in Indiana;

may bring an action for declaratory and equitable relief in the name of the state of Indiana against an individual, a partnership, a copartnership, a firm, a company, a corporation, a limited liability company, an association, a joint stock company, a trust, an estate, a state agency or an officer of the state, a city, a town, a county, a local governmental unit, an agency, or an official of a city, a town, a county, a local governmental unit, or an agency, or any other legal entity or their legal representative, agent, or assigns for the protection of the environment of Indiana from significant pollution, impairment, or destruction.

Ind. Code § 13-30-1-1. As far as we can tell, no Indiana court has ever been asked to decide whether a plaintiff can use the private-attorney-general statute to bring a claim under any part of mini-CERCLA. We do not reach that broad issue either—we hold only that the specific claims brought by the City in this case cannot proceed.

[21] Regarding the claim under Section 13-25-4-10(a), there are two problems. First, a suit "to recover costs and damages," which is what Section 13-25-4-10(a)

permits, certainly does not sound like "an action for declaratory and equitable relief," which is all that the private-attorney-general statute allows. The City contends that such a conclusion "ignores what declaratory or injunctive relief means and looks like in the environmental context" and that "declaratory judgment actions in the environmental context commonly seek a declaration as to who is liable for cleanup costs and in what amount." Appellee/Cross-Appellant's Br. pp. 25-26. Even if we were to accept that premise, there is a second problem: Section 13-25-4-10(a) authorizes only an action for the recovery of "costs and damages for which a responsible person **is liable to the state**[.]" (Emphasis added). Furthermore, any "[c]osts, damages, and punitive damages awarded" under this section are to be deposited in the State's hazardous-substances-response trust fund. Ind. Code § 13-25-4-10(d). In this case, the City seeks recovery of cleanup costs that **it** has incurred; it does not claim that the Foundry is somehow "liable to the state." And the City has made clear that if it were to win a judgment under this statute, it would not deposit its award into the State trust fund. *See* Appellee/Cross-Appellant's Br. pp. 24-25. As such, the City cannot bring a claim under Section 13-25-4-10(a).[1]

[22] As for Section 13-25-4-9(a)(1)—the statute that allows a suit to "compel a responsible person to undertake a removal or remedial action with respect to a

---

[1] Our holding in this regard should be of little consequence to the City, since we have already held that it can proceed with its ELA against the Foundry. In fact, it seems to us that a holding that plaintiffs can use the private-attorney-general statute to sue for the recovery of cleanup costs under mini-CERCLA would render the ELA statute largely superfluous. We do our best to avoid holdings that would leave statutory language meaningless. *Pabey v. Pastrick*, 816 N.E.2d 1138, 1148 (Ind. 2004), *reh'g denied*.

release or threatened release of a hazardous substance from a facility or site in Indiana"—we need not decide whether a suit under this provision could ever be brought by a "private attorney general." Even if we assume that such a claim would, as a general matter, be permissible, the City's claim in this case must fail.

[23] Before a "public officer or agency" can bring an action under the private-attorney-general statute, it "must give notice in writing" to the Department of Natural Resources, IDEM, and the Attorney General of Indiana, Ind. Code § 13-30-1-2, and give them and any other interested agencies the first opportunity to take action on the matter at issue, Ind. Code § 13-30-1-3. In other words, the private-attorney-general statute allows a plaintiff to step into the shoes of the State when the State, for whatever reason, does not act. Here, the City sent a notice pursuant to Indiana Code section 13-30-1-2. However, the notice did not state that the City planned to bring an action to compel a cleanup or that any sort of cleanup was even necessary. Rather, the notice stated that the City had "completed" the necessary remediation activities, "at considerable cost." Appellant's App. Vol. IV p. 60. IDEM's Deputy Chief of Staff and General Counsel apparently responded to the notice but, according to an affidavit provided by one of the City's attorneys, stated only that "IDEM had no objection to the Commission's pursuit of a **cost recovery action**." *Id.* at 58 (emphasis added). The City does not direct us to anything in the record indicating that it notified the State that it intended to bring suit to compel a further cleanup. As such, the State has not been given the statutorily mandated

opportunity to take the action the City proposes to take. Because the notice requirement has not been satisfied with regard to an action to compel cleanup, the City cannot maintain it. This is true even if the action would otherwise be permissible under the private-attorney-general statute, an issue we need not decide.

# III. Nuisance

Finally, we address the City's nuisance claim. The legislature has defined "nuisance" as "[w]hatever is: (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property[.]" Ind. Code § 32-30-6-6. Under Indiana Code section 32-30-6-7, any person whose property is injuriously affected or whose personal enjoyment is lessened by a nuisance can bring "[a]n action to abate or enjoin [the] nuisance[.]"

The Foundry contends that it is entitled to summary judgment on this claim for three reasons. First, the Foundry argues that the claim is barred by the six-year limitation period applicable to "[a]ctions for injuries to property other than personal property," Ind. Code § 34-11-2-7(3), because the City did not bring the claim until almost nine years after learning of the contamination. Second, the Foundry asserts that our decision in *KB Home Indiana Inc. v. Rockville TBD Corp.*, 928 N.E.2d 297 (Ind. Ct. App. 2010), precludes the City's claim. There, we held that, because Indiana's nuisance statutes contemplate "[a]n action to abate or enjoin a nuisance," Ind. Code § 32-30-6-7, the existence of contamination

cannot be the basis for a nuisance action where the activity that caused the contamination is no longer occurring, since there is no nuisance "that could be abated or enjoined." *KB Home*, 928 N.E.2d at 307. Third, the Foundry relies on the holding in *Lilly Industries, Inc. v. Health-Chem Corp.* that "a buyer of property may not sue a prior owner for nuisance based on activities undertaken on the same property and alleged to have harmed the same property." 974 F. Supp. 702, 708 (S.D. Ind. 1997).

[26] We need not address the *KB Home* rationale or the *Lilly Industries* rationale. Even if those cases were wrongly decided (as the City contends) or are distinguishable from this case, we agree with the Foundry that the City's nuisance claim was untimely under Indiana Code section 34-11-2-7(3).

[27] The City does not dispute that its claim is subject to the six-year limitation period established by Section 34-11-2-7(3). Nor does it dispute that it filed suit twelve years after the Foundry's alleged contamination-causing activities ended and nearly nine years after it learned of the contamination. Instead, the City contends that the persisting contamination at the site constitutes a "continuing nuisance." Appellee/Cross-Appellant's Br. p. 27. The City argues that, "[b]ecause this nuisance was of a continuing nature, the statute of limitations began anew each day that the nuisance went unabated." *Id*. at 29.

[28] The City asserts that its argument is supported by our decision in *Stickdorn v. Zook*, 957 N.E.2d 1014 (Ind. Ct. App. 2011). We disagree. The defendants in Stickdorn operated a dairy from October 2003 until April 2005 (when they sold

the dairy). In November 2009, six years and one month after operations began, the defendants' neighbors filed a nuisance lawsuit against them, focusing on the defendants' manure-management practices. The defendants argued that the claim was barred by the statute of limitation, but we held it was not. We began by describing a "continuing nuisance" as follows:

> The distinction between an injury caused by a nuisance that is "permanent" or "original," and one that is considered temporary, transient, continuing, or recurring, is critical to determining when the statute of limitations period for a nuisance action begins to run. An intermittent, non-abated nuisance is a new and separate injury that gives rise to a new cause of action. Successive actions may be maintained so long as the nuisance is permitted to continue, in which damages may be recovered for all injury occasioned prior to the commencement of the action and within the statute of limitations, not extending back of a former recovery. When the nuisance is a continuing abatable one, an action that is prosecuted to a finality will not bar another action to recover for harm sustained in succeeding years, when it is made to appear that the nuisance has not been abated and its continuance has resulted in further injury.

*Id.* at 1022. In allowing the plaintiffs' nuisance claim to proceed, we explained:

> [T]he nuisance odors and contaminated streams from the [defendants'] repeated manure spills, improper spreading of the waste on their fields, and the refusal to put a cover on their manure pit amount to an intermittent, abatable nuisance. Each time that the odors and polluted streams affected the [plaintiffs'] property, the statute of limitations began anew. In short, we can glean from the designated evidence that the [plaintiffs'] damages were recurring and continuing and thus, the manure pit became a temporary, continuing nuisance through its use, and not a permanent one from its mere existence.

*Id.* at 1023. Put simply, because the complained-of activity by the defendants—"repeated manure spills, improper spreading of the waste on their fields, and the refusal to put a cover on their manure pit"—continued past October 2003 and into April 2005, the nuisance lawsuit filed in November 2009 was not barred by the six-year limitation period.

[29] *Stickdorn* does not support the City's "continuing nuisance" argument. Our holding in that case was not based on a finding that the odors and contamination caused by the defendants persisted after they stopped operating the dairy. In fact, there is no indication in the opinion that the defendants' activity caused long-lasting odors and contamination. Instead, we based our holding on the fact that **the activity itself** was ongoing less than six years before the plaintiffs filed suit. *Id.* at 1022 ("The [plaintiffs] assert that their injuries were the result of the [defendants'] repeated, wrongful conduct through April 2005."). Here, on the other hand, it is undisputed that the activity that allegedly caused the contamination ceased more than six years before the City filed suit. Therefore, the mere persistence of contamination at the site does not amount to a "continuing nuisance" under *Stickdorn*, and the trial court did not err by granting summary judgment in favor of the Foundry on the City's nuisance claim.

[30] Affirmed.

Pyle, J., and Barnes, Sr. J., concur.